WOODWARD v. SANGER BROS. et al.

(Circuit Court of Appeals, Fifth Circuit. December 20, 1917. Rehearing Denied January 24, 1918.)

No. 3067.

1. HOMESTEAD ☞214—BURDEN OF PROOF—PRESUMPTION.

Under Const. Tex. art. 16, § 51, declaring that the homestead, not in a town or city, shall consist of not more than 200 acres of land which may be in one or more parcels, where the head of a family owning several parcels of land not exceeding 200 acres in the aggregate and living upon one of them claims all as a homestead, the burden of proving that any one of the tracts is not a homestead is upon the person attacking the claim; the presumption being that all of the land is homestead property.

2. BANKRUPTCY ☞396(5)—LAND SUBJECT TO—SEPARATE PARCEL.

The husband of the bankrupt died leaving his surviving widow and numerous children. At the time of his death he and his wife owned as community property four parcels of land aggregating less than 200 acres, none of which were contiguous, but all were within a few miles of each other. After the death of her husband, the bankrupt continued to reside on the parcel of land which he had occupied as a residence, and, after the last daughter married, the bankrupt and her children entered into a parol partition which was afterwards consummated by the execution of deeds whereby the bankrupt received the home place and one of the outlying parcels in fee. During part of the time after the death of her husband the minor sons of the bankrupt farmed the outlying parcel, and at other times she leased it under yearly leases receiving crop rent, which crops were devoted to her needs. The outlying parcel was rented under such a yearly lease when the bankrupt asserted her homestead exemption therein. Const. Tex. art. 16, § 51, declares that the homestead not in a town

or city shall consist of not more than 200 acres of land which may be in one or more parcels with improvements thereon, providing that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired. *Held*, that as the bankrupt was aged and unable to perform labor herself, and as the outlying parcel of land was used for the purpose of a homestead, furnishing her with part of her sustenance, neither the fact that it was separated from the parcel of land on which she had a residence, nor the fact that the bankrupt instead of hiring laborers and conducting farming operations herself rented the property for crop rent, will preclude her from asserting her homestead rights therein.

3. HOMESTEAD ⊜154—ABANDONMENT—INTENTION.
Where land is impressed with homestead character, its abandonment as a homestead must be beyond doubt before the homestead protection will be refused, and for that reason there must appear an absolute intention to abandon in the absence of acquisition of a new homestead.

4. HOMESTEAD ⊜141(1)—DEATH OF OWNER—RIGHT OF SURVIVING WIDOW.
A surviving widow of one having a homestead in community property has the same right under the Texas laws as the deceased owner.

5. HUSBAND AND WIFE ⊜273(1)—COMMUNITY ESTATE—TITLE.
Under the Texas laws, a wife on the death of her husband is entitled absolutely to one-half of the lands embraced in the community estate.

6. HOMESTEAD ⊜145—PARTITION—EFFECT.
Where a surviving widow, who during the minority of children held all of the community estate of herself and her husband, which was claimed by him as a homestead after the children reached their majorities, etc., and the daughters were married, consented to a partition whereby she received in fee less than one-half of the land in all of which she had a homestead estate, such partition did not free the land which the widow received in fee from its homestead character which had previously been impressed thereon under the Texas laws.

7. HOMESTEAD ⊜23—ACQUISITIONS—PERSONS ENTITLED TO ACQUIRE.
Under the Texas law, a surviving widow, when the head of a family, may acquire a homestead estate.

8. HOMESTEAD ⊜57(2)—ESTATE—USE OF PREMISES.
In determining whether, under the Texas laws, an aged and infirm person had a homestead estate in land, the condition of such person should be considered in determining whether the property was devoted to homestead purposes.

Petition to Superintend and Revise from the District Court of the United States for the Western District of Texas; Duval West, Judge.

In the matter of the bankruptcy of Sarah Catherine Woodward. The bankrupt scheduled land as exempt as part of her rural homestead, and A. Robinson, trustee, filed his report on exemptions omitting the land. The referee sustained exceptions of the bankrupt to the trustee's report and held the land exempt, whereupon the trustee and Sanger Bros. petitioned for review of the referee's order. The District Court having reversed the decision of the referee and directed the trustee to schedule the land as part of the assets, the bankrupt petitions to superintend and revise. Reversed.

Ike D. White, of Austin, Tex. (D. W. Wilcox, of Georgetown, Tex., and Charles A. Wilcox, of Austin, Tex., on the brief), for petitioner. W. B. Carrington, of Waco, Tex., for respondents.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge.   Sarah Catherine Woodward, bankrupt, scheduled as exempt property 59¾ acres of land, as a part of her rural homestead.  The trustee filed his report on exemptions omitting the land.  The referee in bankruptcy sustained exceptions of the bankrupt to the trustee's report excluding the land from exemptions, and held it exempt.  The trustee filed a petition for review of the referee's order, and the District Court for the Western District of Texas reversed the decision of the referee and directed the trustee to schedule the land as a part of the assets of the estate of the bankrupt subject to the claims of creditors.  This order is before us upon petition to superintend and revise.

The following are among the agreed facts:

"J. P. Woodward, the deceased husband of the bankrupt, died in 1891, leaving surviving the widow and eleven children.  At the time of his death he and his wife owned as community property four tracts of land in Williamson county, Tex.; none of said tracts being contiguous, but all being within a few miles of each other.  That, at the death of said J. P. Woodward, Sarah C. Woodward (the bankrupt) and her said husband resided upon, and had been for a number of years residing upon, the 100-acre tract of land claimed as exempt by the bankrupt.  From the time of the death of her husband to the present time, Sarah C. Woodward has continued to reside upon and occupy said tract of land.  That, during the time subsequent to the death of her husband, a part of the children were minors, and she and her minor children and unmarried daughters continued to reside upon said land, and she either had minor children or unmarried daughters living with her upon said land until April, 1913, when the last daughter married.  That J. P. Woodward died intestate, and that no administration was ever had upon his estate.  That no partition was had between Mrs. Woodward and her children of said four tracts of land until August, 1911, when a verbal partition was entered into between Mrs. Woodward and her said children, and in such partition the 59¾-acre tract and the 100-acre tract claimed by Mrs. Woodward as exempt were set aside to her in fee simple, and the other two tracts of land were set aside to the children in fee simple.  That no deed of partition was entered into until January 9, 1915, when a partition deed was executed between Mrs. Woodward and her said children; said verbal partition being recited in said deed, and said land being partitioned in accordance with the verbal partition above mentioned.  Since said verbal partition, Mrs. Woodward has been in possession of the said two tracts set aside to her, and has claimed same as her homestead, and the children have been in possession of the other two tracts.

"That the 59¾-acre tract above mentioned was bought on October 1, 1883, and is about two miles from the 100-acre tract.  That during the year 1887 a part of same was cultivated by J. P. Woodward, but with that exception it has been rented out from the time it was acquired, and was rented out to tenants at the time of J. P. Woodward's death.  That, after the death of J. P. Woodward, the said 59¾-acre tract was rented out a part of the time and was worked by the son of Mrs. Sarah C. Woodward a part of the time for her; but since 1903, and up until said verbal partition, it had been continuously rented out.  That neither J. P. Woodward nor Mrs. Woodward nor any of their children ever actually resided upon said 59¾-acre tract of land.  That, at the time of the death of said J. P. Woodward, one of the tracts of land, consisting of 60 acres, which was set apart to the children in said partition, was woodland, and was being used, and had been used for a number of years previous thereto, to supply wood for the family use; and said tract was also used for the same purpose for some years subsequent to the death of said J. P. Woodward.

"The other tract set aside to the children in said partition consists of 137 acres, and at the time of the death of J. P. Woodward, and for some time previous thereto, was partly cultivated by him and partly rented out. After his death the same was used in the same way; that is, at times all or a part of it was rented out and a part worked by Mrs. Sarah C. Woodward through her children. The 137-acre tract is separated from the 59¾-acre tract by a public road, and is about two miles from the 100-acre tract.

"At this time Mrs. Woodward is living upon the 100-acre tract with her son W. W. Woodward and his wife and two children, and has been so living for three years last past. Up to that time there was an unmarried daughter living on said tract with Mrs. Woodward, said daughter having married about three years ago and left the home place, and W. W. Woodward is the only one of Mrs. Woodward's children who resides with her on said 100-acre tract. * * * Alex Woodward, a son of Mrs. Sarah C. Woodward, has had charge of the rental of the 59¾-acre tract ever since the verbal partition, and for a number of years prior thereto. That ever since the verbal partition in 1911, the 59¾-acre tract has been constantly rented out to tenants; is now rented out to a tenant, Mr. Burke, for the year 1916, for one-third of the corn and one-fourth of the cotton. * * * Whatever corn was raised on same (the 59¾-acre tract) each year prior to 1916 went into Mrs. Woodward's crib, and was there intermingled with whatever corn was put in there off of the 100 acres, and was used in feeding her stock. * * *

"Mrs. Sarah C. Woodward never went upon the 59¾-acre tract, as she is crippled and suffers with a broken hip, and knows nothing about it, as her son Alex Woodward looks after it, as above shown. Mrs. Woodward is not wholly helpless; she walks with a stick and can get around and travel when necessary. She is 72 years of age. * * *

"That about two tons of cane have been gather off of the 59¾ acres for 1915, and was put in Mrs. Woodward's crib. * * * There has been no firewood on the 59¾-acre tract, and none has been taken therefrom."

The case was disposed of below upon agreed facts. The motion of respondent to dismiss upon the ground that "the District Judge had decided the matters of fact involved adversely to petitioner, and that this court is bound by such finding," is therefore overruled.

The only matter for determination is whether, under the agreed facts, the 59¾-acre tract therein referred to is part of the homestead of claimant. If the tract were not detached from the 100-acre tract upon which is the residence of petitioner, her claim would not be contested. It is insisted, however, that because it is detached, and because petitioner has not used the tract other than by "renting on shares," it is not a part of her homestead.

[1, 2] Section 51, art. 16, of the Constitution of Texas, provides:

"The homestead, not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon; * * * provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

This provision of the Constitution leaves very little basis for distinction between the homestead consisting of one tract of not more than 200 acres, and one made up of several parcels, aggregating not more than 200 acres. It is, however, a homestead which the Constitution exempts, and not 200 acres of land in the country. A fundamental idea involved is a place of residence. While circumstances might exist which would fix or maintain the homestead character of the land without actual residence, yet residence is normally an element.

Whatever of physical difficulty there might be in actually living on more than one tract of land was doubtless under consideration when the quoted provision was incorporated in the fundamental law. At most, only a very small part of 200 acres of land can be used as a place of actual residence. Whatever effect this actual holding for this purpose may have in impressing the homestead character has not, by the terms of the fundamental law, been confined to the tract of actual domicile. The fundamental law making no distinction, there should be a hesitancy in placing a judicial limitation upon the homestead rights based upon an assumed difference between a homestead of a single tract and a homestead consisting of more than one tract. The head of a family owning several tracts not exceeding 200 acres in the aggregate, living upon one of the tracts, and claiming all as a homestead, the burden of proving one of the tracts not homestead should be upon the person attacking the homestead claim. The presumption should be that all is homestead.

Of course, the proposition must be reasonably applied, as must all propositions of law. The tracts might be so remote from each other as to preclude, as to some of them, the homestead character. The facts in the instant case do not present such a situation. In Baldeschweiler v. Shipp, 21 Tex. Civ. App. 80, 50 S. W. 644, tracts four miles apart were held to constitute the homestead. In the instant case the tract in controversy is only two miles from the place of actual residence.

The urban home may consist of a place of residence and a place of business. The rural home combines these qualities. It must (with limitations unnecessary to state) be the place of residence, and it may be the place of the only business of the head of the family. The law was, of course, especially designed for the protection of persons engaged in agriculture. It was based on the assumption that, ordinarily, the land would be the source of revenue for the support of the family. Most of the rural homesteads in Texas furnish the means of living as well as the place of living.

The law as declared in the Constitution and statutes does not undertake to place any limitation on how the land may be used, other than that it is to be the homestead. There is no warrant for saying that, when a homestead shall be used in the way best calculated to accomplish the purpose of a homestead, it loses its character as a homestead. In perhaps a majority of cases the Texas homestead owner cultivates a part of his homestead land by his own labor and a part through tenants. There is no provision in the Constitution or laws which undertakes to prescribe this or any other method of using it, nor any provision which proscribes this or any other method of using it.

There is a provision to the effect that no temporary leasing of the homestead shall destroy its homestead character, so long as a new homestead shall not have been acquired. It may be that this provision, placed in the homestead law for the protection of the homestead owner, is susceptible of a construction which would inhibit the permanent or long lease of the property. The effect of such a lease

might be to evidence, or to be evidence of, an abandonment of the homestead. But, certainly, a specific declaration of a right to do a thing is not to be accepted as a declaration that, if you do the thing, consequences will follow which the declaration says shall not follow.

The leases referred to in the statement of facts are oral arrangements by which the tenant cultivates the land on shares. The landowner furnishes the land, and the tenant furnishes the labor; the crop is divided. The contract, not coming under the terms of the statute of frauds, is rarely reduced to writing. The provisions of the contract are customary and perfectly well understood. The contract ordinarily covers the calendar year. A usual incident is that the landlord is compelled to supervise the farming; he frequently makes "advances" ; he must look after the division of the crop. The arrangement, if properly called a "lease," is a temporary lease. If a like contract is entered into from year to year, each new contract makes the beginning and the end of a temporary lease.

Of course, it may be that if the homestead owner moves off the land, and stays off, such use of the land for a number of years may, with other evidence, be used to establish the intention to abandon; but abandonment of the land is not impossible, though the landowner should continue to work the land with his own hand.

If a person should use his land in the way indicated, if he should thereby get his living, thereby provide himself in kind with corn and wheat needed for his own consumption, thereby provide the oats and fodder needed for the horse which he rides; by what provision of the law is he placed, with reference to the tract or tracts constituting the 200 acres which might have become his homestead, in any different position than he would be in if he had done a little work on each of the tracts with his own hand or by hired labor? The law could make such a difference, and, if made, whether reasonable or not, it would have to be observed. But why should an absurdity be imputed to the law, when there is nothing in its terms that would justify or excuse such imputation?

The decision of the District Court in the present case is predicated upon an opinion of the Supreme Court of Texas in Autry v. Reasor, 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748. Both cases present, as strongly as may be, the absurd results of insisting upon a distinction which the lawmakers have not felt proper to make. The homestead claimant in this case is 72 years of age. She is living on one tract, and she owns another tract so situate that it could be a part of her homestead. If she had, at any time while she was the head of a family, labored with her own hands on this second tract in the making of a crop, it would admittedly have become a part of her homestead. Doubtless, the same consequences would have followed if she had worked it with hired hands, or if the labor had been done by any member of her family. But she did not work it with her own hands; she was doubtless entirely unable to so utilize the land. She did not work it with hired hands. There was probably an ample reason for this. The individual labors of the members of the family could be more efficaciously used in cultivating the tract upon which the residence

was located. She probably used the detached land in the only way in which she was in position to use it. From this use she got the support the law contemplated she should get. In addition, she secured in kind what was needed to feed the one horse she used. She got what the Constitution intended she should have, without doing anything which the Constitution prohibited. She is under the terms of the law —under the reason of the law. Why should she not get the benefit of the law? If the rule insisted upon obtains, protection is withdrawn from a class for whose benefit it was peculiarly proper that the homestead law should have been framed. A robust man might work the land himself and extend to the detached tracts the homestead character. A woman with funds might, with hired labor, accomplish the same result; a woman with boys upon whom she could depend for support might utilize them in extending the homestead right for which she had only a limited need; but the infirm, penniless, childless old lady, who most needs, is denied.

In the case of Autry v. Reasor, supra, Mr. Justice Williams, concurring in the original opinion which maintained the homestead right, said:

"I am not prepared, however, to agree that the single circumstance of the use of the rents, even in kind, for the support of the family, was sufficient to impress the rented land with the homestead character."

In the original opinion by Chief Justice Gaines were detailed the following facts: One Forner, a witness for defendants, testified with reference to the 39 acres in controversy:

"That the 29-acre tract was only partly in cultivation when it was originally purchased by Reasor, and that he or his employé prepared the whole of it for use; that he thought Reasor worked there. The ten acres adjoin the other. He did not know that he ever saw Reasor work on that tract, but that he, together with Reasor, gathered corn on the land."

Upon a rehearing the conclusion primarily reached was reversed, upon the ground that, notwithstanding the evidence which had been recited by the court, the trial court had found that:

"Reasor never cultivated the 39 acres of land, or any part of it, by himself or through any one else; he rented the same from the time of the purchase to the time of his death to yearly tenants, who paid for the use of the same."

The court held that this finding of the trial court was conclusive upon it, the appellate court, and concluded that the facts established (excluding the facts recited) were not sufficient to show the 39 acres to be a part of the homestead. It will be noted that, while the court acquiesces in the proposition that the detached land must, to be homestead, be used for some of the purposes of a home "either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like," the distinct holding is that, if the trifling additional facts which have heretofore been detailed had existed, the homestead character would have been impressed upon the land.

The case of Autry v. Reasor may conflict with the conclusion hereinbefore expressed, to the effect that a detached tract may be a part of

the homestead, although never used in any way except by growing crops on shares; but it is distinct and direct authority to sustain the conclusion reached to the effect that the land here in controversy has had impressed upon it the homestead character. By the agreed statement of facts, Woodward, the owner, had, since his ownership of the land, worked it with his own hands, and after his death it had been worked by Mrs. Woodward through her children. These acts of use are very much more definite and considerable than those held in the Autrey-Reasor Case sufficient to impress the homestead character.

[3] It is to be kept in mind always that, whenever land shall have had impressed upon it the homestead character, its abandonment as homestead must be beyond doubt before the homestead protection will be refused. There must be an unequivocal and absolute intention to abandon; and, in most cases, the inference of abandonment will not be indulged in the absence of the acquisition of a new homestead.

During the life of J. P. Woodward, four tracts of land were owned by himself and his wife in community, the tracts being of 100, 59¾, 60, and 137 acres respectively. All of the land was so situate and so used as to be capable of being the homestead of the family, but the protection of the law extended to 200 acres only. From the 356¾ acres they were entitled to a homestead exemption of 200 acres. Any part of this 356¾ acres could have been included within the 200 acres, and any part excluded, except that the residence improvements would, necessarily, have been included in the designated homestead. To simplify a consideration of this matter, let it be assumed that the 100-acre tract had had definitely fixed upon it the homestead character. The other 100 acres could have been so selected as to take a part of each of the three other tracts. Each of these tracts had, at some time or other during the life of the community and the existence of the homestead, been used for homestead purposes. A part of each of the tracts of 59¾ and 137 acres had, during this period, been cultivated by J. P. Woodward. The 60-acre tract was woodland, from which the family wood supply had been taken. All of the land had been so used as to affect it with the homestead character, and placed the owners in position where any part of it could have been designated as the homestead and become exempt from forced sale.

[4-7] Upon the death of J. P. Woodward his widow continued to have the same homestead right that had been in the community. In addition to her absolute legal right in one-half of the land (178 acres), she had a homestead right, as the surviving wife, in 200 acres, and she had a right to have these acres designated and defined, and, because of the former use, she could have had any part of the land so designated. She had the right to designate as a homestead any land which her husband might have so designated; and, as has been shown, he had made such use of all the land as placed him in position to designate any part of it as a homestead. She has never at any time lost any of these rights; she has done nothing which could constitute an abandonment, and she has, at all times, been in a position to claim any of the rights which came to her as the survivor of the family having the homestead right.

By the parol agreement referred to in the statement of facts, her homestead rights and her rights in the fee of the land were segregated from the rights of her children, who had become, by the death of the husband, his heirs, and who had been entitled to participate with the widowed mother in her homestead rights, so long as they continued to be members of her family. She voluntarily surrendered a part of her homestead rights, and received less than one-half of the land (area alone considered) in fee. She did not, by this segregation, lose any of the rights that came to her upon her husband's death. But it is quite possibly the case that, even if the $59\frac{3}{4}$ acres of land had not theretofore been affected with the homestead character this segregation and designation of her homestead rights might have given it a character which it had not theretofore had. She was at this time, not alone the survivor of a family, but she was the head of a family as well. She was in position to acquire homestead rights, distinct from any rights which she might have had as a member of the family of her husband. She and her minor children constituted a family. She, as such head, had a right to designate any land that might become hers to homestead uses within the limits of the Constitution. She owned in the country a tract of 100 acres and a tract of $59\frac{3}{4}$ acres. She lived upon the 100 acres, and she was within such distance of the other tract that she was able to put it to any use for homestead purposes to which the 100-acre tract could be put. She had a place of residence on the land, but she could not utilize any part of it with her own hands. She could not even live upon the property without some arrangement by which revenue should be received from it. Use of it in the only ways available to her for bringing in a revenue, coupled with residence on the land, ought to be held to fix upon all of the land a homestead character, absolutely and entirely without reference to the uses to which the tracts had theretofore been placed.

To indicate how intimately connected the $59\frac{3}{4}$-acre tract of land was with the homestead life of the claimant, and how essential it was to the use of any part of her homestead rights, the facts concerning it will be restated. After its purchase it was, for a time, cultivated by her husband. Upon his death it was worked for a time by her sons for her benefit. It is separated merely by a public road from a tract of 137 acres, which was part of the time rented out and part of the time worked by her through her children, under conditions which admittedly made it a part of the homestead. Being crippled and aged, the $59\frac{3}{4}$-acre tract has been looked after by her son Alex. In the year 1916 her portion of the cotton was sold, and the money went for repairs on the tract and to pay her taxes, and, for groceries and clothing for her personal use. The corn crop failed in 1916, but prior to that time corn raised on the $59\frac{3}{4}$-acre tract went into Mrs. Woodward's crib, where it was intermingled with whatever corn came from the 100-acre tract, and was used in feeding her only horse used mainly for buggy purposes.

[8] The law rarely makes a difference between people, predicated upon age; but it is certainly a fact to be considered in determining the method in which a homestead tract can be utilized, in order to accom-

plish those purposes of protection under contemplation when the law was in the framing. The case of Baldesschweiler v. Shipp, heretofore referred to, distinctly recognizes this element.

The claim of the bankrupt to the 59¾-acre tract should have been allowed. The petition is granted, and the case reversed for action in conformity herewith.

Reversed.