## In re WALICEK.

(District Court, S. D. Texas, at Victoria. March 12, 1925.)

No. 139.

1. **Homestead �609164—Facts held insufficient to establish abandonment of homestead, notwithstanding establishment of home for second wife and her children.**

That one, having established homestead in order to relieve discord between families by first and second marriages, established home on nearby farm for second wife and her children, and himself continued to live on former homestead with children of former marriage, *held* not to show an abandonment by him of the homestead first established.

2. **Homestead �60929—Right to select homestead in absence of fraud on wife rests with husband.**

Right to select homestead in absence of fraud on wife rests with husband.

3. **Homestead �609162(1), 181(3)—Abandonment is question of intent; abandonment must be proved beyond doubt.**

Abandonment of homestead is question of intent, and must be proved beyond doubt, and, before homestead protection will be refused, there must appear absolute intent to abandon.

4. **Homestead �609168—Claimant's rental of major portion of homestead held not to defeat its character as such.**

That claimant of 200-acre homestead rented all but 20 acres of it to persons who farmed it on shares *held* not to defeat homestead exemption.

In Bankruptcy. In matter of the bankruptcy of F. J. Walicek. On petition to review order of referee in matter of bankrupt's claim of homestead exemption. Order of referee reversed, with directions.

Durell Miller, of Yoakum, Tex., and H. W. Wallace, of Cuero, Tex., for trustee.

I. S. Paterson, Geo. J. Schliecher, and Garcia & Harkman, for bankrupt.

HUTCHESON, District Judge. This is a petition to review the order of the referee in the matter of the bankrupt's claim of homestead exemption.

That order refused to recognize the designation made by the bankrupt just prior to the filing of his petition in bankruptcy; and in lieu thereof set apart to the bankrupt a tract of 90 acres, the separate property of Mrs. Walicek, and on which she was living with the children of her former marriage, and, in addition, so much of the 200 acres claimed by the bankrupt as, with the 90-acre tract above referred to, would make a total of 200 acres. The substantial facts proved are as follows:

"(1) In 1902 F. J. Walicek purchased 900 acres of land, and moved upon the land and established his home in a house situated about one and a half miles from the site of the present rural home, which is situated upon the 200 acres, which 200 acres is claimed as exempt in this proceeding. F. J. Walicek at that time was a married man and the head of a family. The house which he and his family occupied when he first moved upon the 900 acres is not situated upon any part of the 200 acres claimed as exempt.

"(2) F. J. Walicek and his first wife and family moved into the house and improvements situated upon the 200 acres now claimed as exempt only a few weeks before the death of his first wife, which occurred in December, 1908. There were at that time three minor children living at home with their parents.

"(3) In October, 1909, F. J. Walicek married a widow, who was the mother of a family of children. F. J. Walicek and his second wife lived in the house situated upon the 200 acres now claimed as exempt for about three years, or until 1912, at which time Mrs. Walicek and her children moved to Terryville and lived in a house which belonged to Mrs. Walicek. During the time that Mrs. Walicek lived in Terryville bankrupt lived on the 200-acre farm and occupied the house which is now claimed as their home. Mrs. Walicek visited the bankrupt on the 200-acre farm, and F. J. Walicek visited his wife at her residence in Terryville, and would stay at Terryville for as much as three and four days at a time.

"(4) In August, 1917, bankrupt, F. J. Walicek, purchased a 90-acre farm about 3 miles distant from the 200 acres claimed as exempt, and Mrs. Walicek with three of her children moved upon the 90-acre farm; the bankrupt helping her to make the move. It was the intention at the time Mrs. Walicek moved upon the 90-acre farm for her to make her home there with her children. There was never any separation between F. J. Walicek and his wife; they were on friendly terms, and lived together as man and wife. She made her principal home on the 90-acre farm, and he visited her there, advised with her about the cultivation of the farm, furnished her teams when she needed them, and did some work in the field. These relations existed between the bankrupt and his wife at the date of the filing of the petition in bankruptcy; Mrs. Walicek at that time making her home on the 90-acre farm and Mr. Walicek staying most of the time on the 200-acre farm. Mrs. Walicek would come over to the 200-acre farm and cook bread enough for several days' supply, and at other times Mr. Walicek would go to the 90-acre farm where his wife made her home and would eat his meals there. There were no children born to Mr. Walicek by his second wife.

"(5) In October, 1917, bankrupt, F. J. Walicek, borrowed $5,430 from the Federal Land Bank of Houston, Tex., and gave a deed of trust upon 442 acres of land, which included the 200 acres claimed as exempt. Mrs. Walicek did not sign the deed of trust, and the deed of trust contained the following recital with reference to the bankrupt's homestead:

" 'The herein described property, or any part thereof, is not our homestead, nor claimed, used, or enjoyed by us as such, and we have no other property which we use, claim, and occupy as such homestead.'

"At the time that this deed of trust was executed Mrs. Walicek was living on the 90-acre farm, and making her home there, and Mr. Walicek was living on the 200 acres alone; his minor son, a son of the first marriage, being in a military camp at San Antonio, Tex.

"(6) In November, 1917, the bankrupt deeded the 90-acre farm to his wife, and the deed from the bankrupt to his wife was filed for record January 16, 1918, and recorded January 18, 1918, in volume 80, on pages

467, 468, of the Deed Records of De Witt county, Tex. Mrs. Walicek was living on the 90-acre farm at the time the farm was deeded to her, having moved there in August, 1917, and continues to make the 90-acre farm her home to this day.

"(7) Just prior to the filing of his petition in bankruptcy the bankrupt had a survey made and field notes furnished for the 200 acres of land claimed by the bankrupt to be his homestead, and executed and had recorded a designation of said 200 acres as his homestead, according to the statutes of the state of Texas. The attorneys for the bankrupt were preparing his petition in bankruptcy at the time said survey was made and said designation was executed. The bankrupt is claiming the same land described in said designation as exempt.

"(8) On the 25th day of October, A. D. 1921, at which time the bankrupt and his minor son were living there, the bankrupt executed a deed of trust to the Farmers' & Merchants' State Bank of Yoakum upon a tract of land including the 200 acres claimed as exempt. This deed of trust is recorded in volume T on pages 204, 205, 206, of the Deed of Trust Records of De Witt County, Tex., and contains the following recital:

" 'Out of the above, however, I am entitled to a homestead exemption of 200 acres.'

"The land in excess of the 200 acres claimed as exempt which was covered by the deed of trust to the Farmers' & Merchants' State Bank was sold by the trustee in bankruptcy to the Farmers' & Merchants' State Bank, and there was excepted from the conveyance made in said deed the same 200 acres claimed as exempt by the bankrupt. This deed is recorded in the Deed Records of De Witt County, Tex., in volume 89, pages 416, 417, 418.

"(9) The bankrupt at one time owned two dwelling houses in the town of Yoakum, Tex. He and his second wife lived together in one of them for a short time. The house occupied by the bankrupt and his second wife was traded as a, part of the consideration for the 90-acre farm. This residence in Yoakum was only temporary, the household goods not being removed from the farm, and thereafter the bankrupt went back to the 200 acres, and continued to live on it until he went into bankruptcy in 1922. At the date of the adjudication he was living on the 200 acres claimed as exempt with his minor son, the sole surviving minor constituent of his first family.

"(10) The bankrupt, F. J. Walicek, claimed the following property as exempt, and listed it in his schedule under B–5 as follows: 200 acres of land, part of the A. Dillard, J. J. May, Wm. Fream, and J. P. Wallace original surveys and grants, as is shown by the voluntary homestead exemption on file and of record in the office of the county clerk of De Witt county, Tex., of an estimated value of $9,000."

[1] Whatever may be the legal effect of the facts, they admit of only one conclusion. There was never at any time any intention on the part of the bankrupt to abandon the 200-acre home, nor was there any intention on his part to designate the 90 acres, on which he had domiciled his wife, as his home.

It was his intention merely to move her from Terryville, where she had been staying on some separate property to a farm nearer his place, and there establish her in a home, to the same extent and not differently from the way she was living in Terryville.

In short, torn between his sense of loyalty and fidelity to the children of his first wife and affection for and interest in the wife of his second marriage, he was making the best out he could by maintaining a home on his mansion tract for himself and the constituents of his first family, while providing for his second wife and her children a place of residence reasonably near and convenient to him, without compelling the two discordant families to actually live together.

Upon the main points of law as well as of fact the contesting parties are agreed. The difference between them consists in the different inferences drawn by them as to the abandonment of the one home and the selection of another.

On this point the referee has flatly found an abandonment of the home on the 200 acres and the establishment of the home on the 90 acres, and no re-establishment on the 200 acres claimed as exempt, or, as he puts it in his fourth conclusion:

"By the purchase of the 90-acre farm and the act of moving his wife and her children upon it with the intention that they should make the 90-acre farm their future home, was both the acquisition of a new home and the abandonment of the old in so far as the two tracts exceed the 200 acres provided for in the state Constitution and statutes."

In these conclusions the referee erred, both that there had been an abandonment of the old home and that there had been an acquisition of a new home, and especially did he err in finding that the 200-acre tract was abandoned as to 90 acres of it and not as to

the balance, for such a conclusion is wholly illogical, unreasonable and unsound. If there was an abandonment 'of the 200 acres as a home, it was not partial, but complete. If there was no abandonment, it likewise was not partial, but complete, and the referee should have either sustained the entire exemption claimed, as I am doing, or none of it.

[2, 3] The legal considerations which govern this matter may be briefly stated as follows:

"The right to select the homestead, where there is no fraud upon the wife (and certainly there was none here), rests with the husband; the husband, being the head of the family, and being charged with 'the duty of supporting it, is pre-eminently the proper person to choose the home. His selection may be, in fact, contrary to her wishes." Ward v. Baker (Tex. Civ. App.) 135 S. W. 620.

"When he dedicates a place as his home, eo instante it becomes the home of the wife and family also." Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Duncan v. Hand (Tex. Civ. App.) 87 S. W. 233; Speer's Law of Marital Rights, p. 504.

There is no doubt under the facts in this case that the homestead was originally fixed by the husband on the 200 acres. The trustee relies for the theory of the abandonment of that home and the selection of a new one upon the purchase of the 90 acres, and the domiciling of the wife thereon.

"Where land is impressed with homestead character, its abandonment as a homestead must be beyond doubt; before the homestead protection will be refused * * * there must appear an absolute intention to abandon." Woodward v. Sanger Bros., 246 F. 777, 159 C. C. A. 79.

"It is almost entirely a question of intention" (Speer on Marital Rights, p. 534), "nor does a mere temporary renting of the homestead change its character" (Id., p. 536).

Whatever might be the law in this case if the husband had had no other family, the fact that he maintained a home for the minor son of his first family on the 200 acres, coupled with his legal right to select a home, is conclusive evidence that his intention was not to abandon that home, but to maintain it, and out of the fact that he provided a home for his second wife and her children no intention prejudicial to the rights of himself and the minor child of his first marriage can be deduced.

Beside, if the evidence supported the theory of abandonment in 1920, as the referee finds at the time of the temporary residence of the bankrupt in Yoakum, he thereafter re-established his home on the 200 acres, as under the circumstances of this case he had a right to do, and at the time of the bankruptcy and for some time prior thereto he was in good faith and with a bona fide intention of maintaining his home thereon, occupying the 200 acres.

[4] It is suggested in the brief of the trustee that, because all of the 200 acres except 20 acres was being farmed by renters on thirds and fourths, only 20 acres thereof was impressed with the homestead character.

This contention is contrary to the theory of the homestead law. It is true that in the case of Autry v. Reasor, 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748, it was held under the particular facts that an isolated tract which had never been occupied or personally used by the homestead claimant, but had been rented to tenants, was not embraced within the homestead.

That decision, as with entire propriety was held by the circuit court in Woodward v. Sanger Bros., 246 F. 778, 159 C. C. A. 79, must be limited to its precise facts, and certainly cannot furnish the basis for a decision in a case of this kind, where the 200 acres is part of one complete and homogeneous tract.

Here, as in the Woodward Case, the claimant to the exemption is past seventy. He has the right to cultivate his homestead by tenants rather than with hired hands. Nothing in the principle of the homestead law could deprive him of his homestead because of the methods by which he makes it yield him his support.

Viewing the matter in the light of the general history of homestead exemption, which is to protect the head of a family in the 200 acres claimed by him, in this case where there is not only no fraud upon the wife, but where her interests are being fully and entirely protected, while at the same time the husband endeavors to protect the children of his first marriage, it is a strained and unreasonable construction which splits his home into two sections, part of it being on 90 acres where his wife resides and the balance on the 200 acres where he resides.

The order of the referee will therefore be reversed, with directions that the trustee set apart to the bankrupt the 200 acres claimed by him, and that the bankrupt recover his costs.