## GINSBERG v. SELBEST DRESS, Inc.

### No. 14313.

Court of Civil Appeals of Texas. Dallas.
March 23, 1951.

Rehearing Denied April 20, 1951.

· Henry Klepak and John P. Koons, both of Dallas, for appellant.

Ungerman, Hill & Ungerman and Leonard E. Hoffman, Jr., all of Dallas, for appellee.

YOUNG, Justice.

The suit below was on verified account for balance of $2,951.82 admittedly due on the trial, subject to defendant Ginsberg's claim of offsets by way of cross-action. Following a jury verdict, appellee as plaintiff recovered judgment in amount sued for and interest, with resultant appeal.

The affirmative matters pled in aforesaid cross-action are sufficiently reflected in jury issues and answers, viz.: (1) That some of the dresses shipped by Selbest Dress, Inc., to Ginsberg were defective; (2) the dresses returned by Ginsberg to Selbest were not returned for the purpose of credit; (3) nor was it agreed that such dresses as were returned would be replaced by dresses in good condition; (4) Ginsberg paid out no money for style cards not used because of defective condition of any dresses; (5) neither did he lose any profits by reason of the failure on part of Selbest Dress, Inc., to replace the dresses in question.

In June 1948, Ginsberg had placed with Selbest Company a preliminary order for a quantity of dresses and later twelve samples were made up and sent to defendant at his Dallas address, from which samples 900 dresses were made the subject of purchase (300 each of Styles 1700, 1701, and 1702, various sizes and colors). The goods were then manufactured and shipped, reaching defendant in midsummer; he promptly returning 98 dresses of Style 1700, 85 of Style 1701, and 236 of Style 1702, all priced at $5.29 each, claiming defects and advising that upon repair and return of same they would be accepted subject to prepayment of freight. On arrival of the shipment in New York, it was inspected by plaintiff and a resident buyer for Ginsberg, and claim of defects disaffirmed; plaintiff offering to make concessions in quantity of one style, to which defendant made no reply. Upon receipt of above returned dresses, Selbest allowed full credit therefor ($2,216.51) and the suit was for balance allegedly due as already stated.

Defendant's cross-action was based on this failure of plaintiff to deliver to him the full number of 900 dresses of type and quality contracted for; chief item of damage being $656.54 for certain style cards printed in anticipation of sale of the entire lot of 900 dresses, and $700 profits lost through inability to fill orders in the same connection. The testimony in chief concerning these losses was by defendant. (His cross-action for damages was increased in trial amendment to $1,695.87.)

Ginsberg, shortly after above transaction with plaintiff, suffered a fire with around $58,000 of resulting damage. He testified to canceling an outstanding order with Sorority Frocks (another dealer) in September 1948; to selling in February 1949 some 7,000 dresses as salvage for $1.00 each (value $5 to $9 per garment); of making a settlement with all creditors except plaintiff in early part of 1949 for fifty cents on the dollar; in April sending

the plaintiff the following telegram: "Offering you $1000 cash in settlement of your claim. Unless we hear from you by Friday April 22 we will file bankruptcy proceedings and you will get practically nothing. Advise." This message was received in evidence just prior to the conclusion of testimony, over defendant's objection. Benj. Wein, President of plaintiff corporation, testifying in person, stated that he had written a few letters to defendant with reference to balance of account; that the latter had made no complaint to him about any outlay in printing of style cards and lost profits, all incident to plaintiff's failure to repair and return the balance of dresses originally ordered; the claim being finally turned over to the Company lawyer for collection; Ginsberg, on the other hand and in rebuttal, saying that in a conversation with the lawyer (Bernard Sands): "I told Mr. Sands, until we settled the matter of the returned dresses we sent to Selbest, we cannot do anything about the account."

Appellant's points of appeal are based on asserted errors of the trial court, viz.: (1) In admitting aforesaid telegram because same constituted an offer of compromise; (2) in admitting testimony of appellee's witnesses to effect that the returned dresses were resold with no complaints registered by purchasers on resale; (3) in overruling objection to Issue 1 of the court's charge because not presenting an ultimate question of fact; (4) in submitting Issue No. 3 as improperly requiring defendant to establish a new and individual contract between the parties wherein plaintiff agreed to repair and return the defective dresses; (5) in overruling defendant's motion for mistrial and refusal to sustain his motion for judgment.

■ The doctrine of inadmissibility of evidence touching an offer to compromise or settle an existing controversy between the parties is well settled; but the determination of what constitutes an offer of compromise within the general rule is often a matter of difficulty. As background to the telegram in question, there is no evidence of prior negotiations for settlement; same apparently being in response to repeated demands for payment. The communication was in the nature of an ultimatum rather than an overture for peaceful settlement of the controversy; an arbitrary effort to secure relief on defendant's own terms irrespective of the merits of either the cross-action or plaintiff's debt. We think the court was well within its discretion in ruling from all surrounding facts and circumstances that the offer was not privileged as one of compromise; on the other hand, being competent testimony as an admission against interest and confirmatory of other statements of defendant relative to correctness of the account.

■ Appellant's further contentions are sufficiently answered, we think, by counter points of appellee, in effect that (1) since the jury made affirmative answer to defendant's claim of defects in and to the returned goods, admission of the particular testimony concerning resale of such dresses and lack of complaint with respect thereto was rendered harmless; and (2) the trial court having submitted issues with reference to the damages claimed by defendant, without objection, and the jury having found that Ginsberg had sustained no damage by reason of style cards made up but not used, and had not lost any profits by failure of Selbest to replace defective dresses, any claim of error regarding submission of Issues 1 or 3, or conflicting answers to Issues 2 and 3, became immaterial.

■ The jury finding of no damage in connection with defendant's cross-action is indirectly assailed, in that the testimony of Ginsberg thereon was uncontradicted and "remained unshaken on cross examination." Aside from the fact that defendant's claims of offsets were unliquidated and thereby essentially questions of fact, it is the general rule in Texas that no matter how positive and uncontradicted the testimony of an interested party may be, the question of his credibility is usually one for the jury's determination. Mills v. Mills, Tex.Com.App., 228 S.W.

624

919; Flack v. First National Bank of Dalhart, Tex.Sup., 226 S.W.2d 628.

■■■ Appellant argues a conflict of findings in that jury answers 2 and 3 are to effect that the dresses sent back to Selbest by Ginsberg were neither for purpose of credit nor under an agreement that same would be repaired and returned in good condition. These findings are reconcilable; for, although the purpose of Ginsberg in returning the dresses was for repair and redelivery in good condition, such action, in the law of sales, was no more than a counter proposal requiring the seller's assent, which was not forthcoming. Instead, Selbest Company simply gave Ginsberg full credit for all returned goods. Assuming the transaction at hand to be a sale by sample, a buyer cannot rightfully demand a replacement of so-called defective goods by others in good condition unless by agreement on part of the seller. The buyer, in such a situation, may reject the goods as not in accord with the sample or warranty, or he may accept same and either offset the purchase price with the difference in value, or recover back any purchase price paid by him; in other words, move to rescind the contract or else sue in damages for its breach. See 37 Tex.Jur., Sales, p. 314, sec. 139, and appellant's own citations to such effect: Robert McLane Co. v. Swernemann & Schkade, Tex.Civ.App., 189 S.W. 282; Mueller v. Simon, Tex.Civ. App., 183 S.W. 63; Adkins-Polk Co. v. John Barkley & Co., Tex.Civ.App., 297 S.W. 757.

The judgment under review is accordingly affirmed.