Stella VAUGHN, Appellant,

v.

Zac VAUGHN, Independent Executor of the Estate of A. L. Vaughn, Deceased, Appellee.

No. 6787.

Court of Civil Appeals of Texas.

Texarkana.

April 21, 1955.

Rehearing Denied May 19, 1955.

428

Harry Bunnenberg, Vernon, for appellant.

Cunningham, Cole & Southerland, Bonham, for appellee.

FANNING, Justice.

Appellant, Stella Vaughn, the surviving wife of A. L. Vaughn, deceased, who elected not to take under her deceased husband's will, as plaintiff sued Zac Vaughn, Independent Executor of the estate of A. L. Vaughn, Deceased, specifically alleging that a 40-acre tract of land, a 36-acre tract of land and a 48-acre tract of land, the separate property of her deceased husband, constituted the homestead of herself and her deceased husband prior to his death, and that they resided upon, used, claimed and enjoyed said premises as their homestead, and used the rents and revenues therefrom for their sustenance and support, and in this connection further specifically alleged that the 40-acre tract and the 36-acre tract were contiguous and adjoining and were the identical premises on which plaintiff and A. L. Vaughn actually resided

at the time of his death. Plaintiff also specifically alleged that the 48-acre tract was located a few miles distant from the other two tracts but that the rents, revenues and income therefrom were used by plaintiff and her deceased husband for their sustenance and support. Plaintiff further alleged that she had continued to reside upon, and to use and claim the same as her homestead and that plaintiff had no other homestead, etc. Plaintiff prayed that the defendant, as executor, be required by the court to set aside to her use as a homestead the said three tracts of land. Plaintiff also sued appellee executor for an accounting on the rents and revenues on the alleged homestead property, for one-half of the community property of herself and husband remaining after the payment of community debts, for an allowance of $500 in lieu of exempt property, for an allowance of $1,000, or for such other sum as might be found appropriate for one year's support, etc.

Defendant in addition to generally denying the allegations of plaintiff pleaded specially that the three tracts of land were the separate property of A. L. Vaughn, deceased, and that the 40-acre tract alone constituted the homestead of A. L. Vaughn; and also that his will in effect designated said 40 acres as his homestead; defendant also stated the account between parties, alleging certain indebtedness against plaintiff in favor of her husband's estate for which recovery was sought; defendant also pleaded that certain advancements made to decedent's children did not constitute a claim in favor of appellant; defendant also resisted appellant's claim for allowance in lieu of exempt property; defendant also pleaded a rental contract whereby Zac Vaughn had rented the 40- and 36-acre tracts from his father for the year 1954.

The case was tried by the court, without the intervention of a jury. The trial court found that the 40-acre and 36-acre tracts, contiguous to each other, were the homestead of appellant and set aside said two tracts to her as homestead, and also awarded to her the rents and revenues from said two tracts. The trial court also specifically found that the 48-acre tract (not contiguous to the other two tracts), the separate property of A. L. Vaughn, did not constitute any part of the homestead of plaintiff and the said A. L. Vaughn, deceased, and that the rents and revenues collected therefrom after the date of the death of A. L. Vaughn were not the community property of appellant and the said A. L. Vaughn. The court also allowed appellant $750 for one year's support, allowed her $100 in lieu of exempt personal property not on hand at the death of decedent, and also awarded her certain items of exempt personal property. The court also found that plaintiff was indebted to decedent's estate in the sum of $173.55, which was allowed as an offset and credit to the amount to which plaintiff was entitled; the court also found that plaintiff was entitled to one-half of certain community property and one-half of community funds after the payment of certain community debts, that the executor should make diligent efforts to collect certain advancements made, etc., that appellee was entitled to an agricultural lease on two of the tracts. The court also divided the court costs, stating his reasons therefor. Mrs. Stella Vaughn has appealed.

Appellant presents nine points. Her points 1 and 2 read as follows:

1. "The trial court erred in finding and holding, and in rendering judgment accordingly, that the forty-eight acre tract of land out of the E. W. Pittman Survey in Fannin County did not constitute a part of the plaintiff's homestead, and in denying her judgment therefor.

2. "As a necessary corollary to appellant's first point (above), the trial court erred in failing and refusing to hold that, and in denying plaintiff judgment for, the rents and revenues, or the proceeds thereof, for the year 1953, and so long thereafter as the same should be her homestead, accruing from the forty-eight acre tract of land out of the E. W. Pittman Survey in Fannin County."

·Appellant's points 5 to 8, inclusive, complaining of other matters, however, are couched in the same form as points 1 and 2, supra. Point 9 complains of the trial court's taxing costs equally against the parties.

Appellee in his counterpoints 1 to 9, inclusive, contends that appellant's points 1 to 9, inclusive, are only assignments "in effect asserting that the evidence conclusively establishes a certain fact or compels a certain conclusion and thus raises a question of law and does not determine the jurisdiction of the Court of Civil Appeals to determine a fact issue." Appellee in support of these nine counterpoints has cited the following authorities: Miguez v. Miguez, Tex.Civ.App., 221 S.W.2d 293; De Busk v. Guffee, Tex.Civ.App., 171 S.W. 2d 194; Clark v. Cohen, Tex.Civ.App., 205 S.W.2d 797; Brown County Water Improvement Dist. No. 1 v. McIntosh, Tex. Civ.App., 164 S.W.2d 722; Krumb v. Porter, Tex.Civ.App., 152 S.W.2d 495.

Appellee's 10th counterpoint reads as follows:

"Appellant's points, if they are legally sufficient, only assert as error that the findings are against the preponderance of the evidence and do not present any points that the findings are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, and place no burden on the Court of Civil Appeals to examine the record as a whole."

Appellee in support of his counterpoint 10 cites the case of Poynor v. Varner, Tex. Civ.App., 266 S.W.2d 462, 463. We quote from the court's decision in this case as follows:

"Appellant's points that the findings are against the preponderance of the evidence do not present the point that such findings were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. In re King's Estate, [150 Tex. 662] 244 S.W.2d 660, 662; Texas

Employers' Ins. Ass'n v. Moran, Tex. Civ.App., 261 S.W.2d 855, 856 (application for writ of error dismissed for want of jurisdiction). However, after a careful study of the statement of facts, we think the result would probably have been the same. In determining whether the findings are against the preponderance of the evidence we are required to consider only the evidence favorable thereto and if the evidence favorable thereto and to disregard all evidence to the contrary raises a question of fact on which reasonable minds might differ we are not authorized to set aside the findings." (Citing authorities.)

Appellee's counterpoint 11 reads as follows:

"Appellant's points to the effect that the court erred in entering his judgment because the same was contrary to law and evidence in the case are too general to call attention to any particular ruling or action of the trial court and presents nothing for review."

Appellee in support of this counterpoint cites the case of Novita Oil Co. v. Smith, Tex.Civ.App., 247 S.W.2d 151, 153. We quote from this case as follows:

"The seventh point is, 'The court erred in entering judgment for the plaintiff upon the verdict of the jury because the verdict of the jury was contrary to the law and the evidence in this case.' This point is too general to call attention to any particular ruling or action of the trial court and does not present any question for our decision. [Texas Rules of Civil Procedure] Rule 322; Neinast v. Hill, Tex.Civ.App., 206 S.W.2d 625, 627; AAA Air Conditioning & Mfg. Corp'n of Texas v. Barr, Tex.Civ.App., 186 S.W.2d 825, 826 (WR); Rules 374, 321, 418(b) and 420. * * *

"In Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, it was held that if a point calls attention to the particular ruling or action complained of,

it is sufficient and the court will look to such a point and the statement, argument and authorities thereunder to determine the question of reversible error. We have wasted much time in a serious endeavor to ascertain what questions we are called upon to decide. Without intending to set a precedent, we have concluded to pass upon the questions intended to be presented where such intent can be reasonably ascertained from the points and assignments considered in the light of the statement, argument and authorities."

Appellee's counterpoint 12 reads as follows:

"Appellant's points, if they are legally sufficient, which in effect present only the question of no evidence, do not invoke the jurisdiction of the Court of Civil Appeals to decide the sufficiency of the evidence to support a finding; and if there is any evidence the judgment of the trial court must be sustained."

In support of this counterpoint appellee cites the case of J. A. & E. D. Transport Co. v. Rusin, Tex.Civ.App., 202 S.W.2d 693, which holds that a point raising the "no evidence" complaint does not question the sufficiency of the evidence and if there is any evidence the judgment must stand. To this authority there can be added a recent case of the Supreme Court of Texas, Releford v. Reserve Life Ins. Co., 276 S.W.2d 517, 518, wherein the Supreme Court said:

"We note that the Court of Civil Appeals said in its opinion that 'the answer of the jury to Issue No. 1 is "so against the great weight and preponderance of the evidence as to be clearly wrong"', and that 'certainly there is not sufficient evidence in this record to support the judgment of the trial court.' We have carefully examined the points of error contained in appellant's brief in the Court of Civil Appeals and we find no point challenging the sufficiency of the evidence to support the jury's verdict. The court would have no authority to remand the cause on points of error raising only 'no evidence' questions. Hall Music Co. v. Robinson, 117 Tex. 261, 1 S.W. 2d 857; Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982."

While we are inclined to agree with appellee, under the authorities cited above, that at least to a certain extent the scope of judicial review in this case is somewhat limited, we have reviewed the entire record and have reached the conclusion that a full judicial review will reveal that the judgment of the trial court was correct on the merits and that the judgment of the trial court should be affirmed. In view of this we deem it unnecessary to specifically pass on appellee's counterpoints questioning the sufficiency and scope of appellant's points.

Appellee by his counterpoint 13 contends that the trial court correctly rendered judgment holding the 48-acre tract to be no part of plaintiff's and her deceased husband's homestead because such holding is supported by the evidence. Appellee by his counterpoint 14 contends that the burden of proof was on appellant to establish that the 48-acre tract constituted a part of the homestead in question and when appellant failed to do so, the trial court correctly rendered judgment declaring the same not to be her homestead.

Appellant and A. L. Vaughn married in 1929 and went to live on her farm in Wilbarger County, Texas. (Her farm was later lost by foreclosure.) At the time of and prior to said marriage, A. L. Vaughn and his children of a prior marriage owned six tracts of land in Fannin County, Texas, aggregating 238 acres, which were then rented out and A. L. Vaughn did not have possession of any of it. The record is also silent as to whether A. L. Vaughn had prior thereto impressed a homestead use or right upon any particular portion of the 238 acres. The record also does not reveal that A. L. Vaughn ever executed a formal written designation of any particular land anywhere as his homestead. In 1930, in a partition suit between A. L. Vaughn and his children of a prior marriage, A. L. Vaughn was decreed title to a 64-acre tract and to

a 48-acre tract, which was 2½ or 3 miles away from the other tract. Thereafter A. L. Vaughn purchased with his separate funds a 12-acre tract contiguous to the 64-acre tract, and this made two contiguous tracts of 40 and 36 acres. These three tracts were rural property not located in a town, village or city. Appellant and her husband, A. L. Vaughn, continued to live on her farm in Wilbarger County, Texas, until 1932, (except for part of the time when Mr. Vaughn stayed with his daughter), when they moved and took up residence in a house on the 40-acre tract in Fannin County and where they continued to reside until Mr. Vaughn's death in July, 1953. Mr. Vaughn was 86 years old at the time of his death, and Mrs. Vaughn was about 76 or 77 years old at that time.

Appellant, Mrs. Vaughn, testified that the 40 acres was where the home house was, that the 36-acre tract joined the 40 acres and that the 48 acres was located away from the two tracts "about 2 miles and a half or 3 miles. I don't know whether that was from Bailey or where we lived. We were just south of Bailey." Appellant also testified that if the three tracts were a homestead, she was claiming it and had not abandoned it. At one place in her testimony she testified:

"Q. Did you use the rents and revenues from all three tracts for your maintenance and support, you and Mr. Vaughn? A. Yes.

"Q. All three of them? A. Yes, sir.

"Q. What was Mr. Vaughn by vocation? A. He was a farmer.

"Q. Was he a farmer at the time you married him? A. Yes, sir.

"Q. Did he work the land himself whenever his health permitted? A. Yes, he always wanted to get out.

"Q. Whenever his health permitted he always farmed the places himself, when his health was not good—? A. He rented it. He rented at various times to others.

"Q. Was he a farmer at the time of his death? A. Well, I suppose if he was living on the farm he would be counted as a farmer because that is all he ever knew to do.

"Q. That is all he had ever done? A. That is what he liked to do.

"Q. Then did you and Mr. Vaughn live on this forty acre tract? A. How did you put that?

"Q. Did you and Mr. Vaughn have a house on the forty acre tract? A. Oh, yes.

"Q. It was in that house in which you lived? A. Yes.

"Q. But you used all of the land for his and your support throughout the time? A. Yes.

"Q. Was he living in that very same house from the time you came down here in 1932 until the time of his death? A. Yes."

From this testimony it might seem to appear that A. L. Vaughn at some time had worked or farmed all these tracts, including the 48-acre tract; however, in testifying as to the particular use of the 48 acres at another place in her testimony (on cross-examination), appellant testified that the 48-acre tract had been continuously rented to tenants prior to and continuously since the time she and Mr. Vaughn came back to Fannin County, and that her husband, A. L. Vaughn, had worked the 40 acres where they lived but that he had not worked the 40 acres but one year; that he had not worked the 40 acres "More than one year since we came there" (1932), because he was not able to work and that he had rented it out. We think this testimony on cross-examination would clearly show that Mr. Vaughn only worked or cultivated the 40-acre home tract for one year, that he never cultivated or farmed the 48-acre tract in question but that it had been continuously rented out to tenants since and prior to his marriage to appellant. There is no testimony from appellant in the record that she or her husband ever made any particular use

of the 48 acres, such as farming, pasturing, cultivating, cutting firewood, or anything else other than that the 48-acre tract was rented on "third and fourth" and that they used the income and rents to live off.

Zac Vaughn, appellee, also testified to the effect that the only land worked by his father was the 40-acre tract (which he worked in 1932 but not thereafter because his health was bad thereafter), and that the 48-acre tract and the 36-acre tract had been rented out by his father on "third and fourth" and that his father did not pasture stock on the 36-acre and 48-acre tracts.

The will of A. L. Vaughn was introduced in evidence by appellant. We quote from said will as follows:

"I also will and bequeath to my said wife, Stella Vaughn, for and during her natural life only, *the home place consisting of about 40 acres, being the place where I now live,* and the household and kitchen furniture located therein.

"At the death of my said wife, Then I will and bequeath the *said homestead* and such of the household and kitchen furniture as are still in existence, * * *" (Italics supplied.)

Appellant introduced in evidence tax renditions to show that a homestead exemption was claimed on the 48-acre tract by A. L. Vaughn. However, there was positive testimony from Judge Cunningham, a distinguished attorney of the Bonham bar, who had known Mr. Vaughn for many years, who drew his will, who was familiar with his signature, and who compared the genuine signature on the will with the alleged signatures on the tax renditions, which positive testimony of Judge Cunningham was to the effect that the signatures on the tax rendition sheets were not made by A. L. Vaughn. Also Zac Vaughn testified that he signed his father's name to the renditions sheets at the request of some tax assessor, and that he could not read, did not swear to anything, did not render a homestead or anything else, that the tax assessor just filled it out (without any explanation other

than asking him to sign it), saying "he hated to disturb me."

In Cocke v. Conquest, Tex.Com. App., 120 Tex. 43, 35 S.W.2d 673, 678, it is stated:

"*The testimony, a part of which we have quoted, shows beyond dispute that Lee Conquest, the owner, had, since his ownership of each parcel of land, personally worked each parcel. These acts of use are clearly sufficient to have impressed the homestead character upon each of the parcels. When the homestead character has been impressed upon a parcel of land,* the authorities are uniform that thereafter a mere temporary leasing thereof, with no intention of abandonment, is insufficient to remove from the land its homestead character. * * *

"The framers of our organic law had no thought of exempting 200 acres of land in the country as a home for each family, upon which its members might reside, when they thought proper, but *this exemption is only in the event such lands are used for the purpose of a home.* The exemption is not of any definite number of acres, but of the home, and the number of acres is a limitation placed upon that home. As said by the author of Speer's Law of Marital Rights in Texas, par. 463: 'Expressions may be found in some of the decisions which seem to indicate that the proviso, with reference to the use of property for home purposes do not apply to the rural homestead. But the better authorities as well as a proper construction of their language of the section show unmistakably that it does.' Brooks v. Chatham, 57 Tex. 31." (Italics supplied.)

In 22 Tex.Jur., pp. 260–261, it is stated:

"The claim of homestead is sustainable where it appears that the parcel was used as an adjunct of the residence tract for the purpose of growing crops or a pasture for milch cows

and work stock. Again, the homestead law may be successfully invoked where the evidence shows that the claimant personally worked the land or hired others to do so. The effect of renting, however, is to render the homestead claim unsustainable." (Citing authorities as follows:) Lasseter v. Blackwell, Tex.Com.App., 227 S.W. 944, affirming Tex.Civ.App., 203 S.W. 619; Paris Grocer Co. v. Pirtle, Tex. Civ.App., 280 S.W. 854; Farmers' State Bank v. Welch, Tex.Civ.App., 279 S.W. 481; Franklin v. Smith, Tex. Civ.App., 171 S.W. 501, writ of error refused; Wiseman v. Watters, Tex. Civ.App., 142 S.W. 134; Roberts v. Cawthon, 26 Tex.Civ.App. 477, 63 S. W. 332. (Interpolation ours.)

In Farmers' National Bank of Seymour v. Coffman, Tex.Civ.App., 79 S.W.2d 905, 907, error refused, a case involving a claimed rural homestead in a segregated tract, the court stated: "That appellee rented the place and used the rent products for 'feed for teams, hogs and cows and the money for general living expenses' was no proof of the use of the land for the purposes of a home. Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748; Lasseter v. Blackwell, Tex.Com.App., 227 S.W. 944."

The case of Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748, opinion on rehearing by Chief Justice Gaines, is a leading authority on the homestead questions involved here, has been frequently cited with approval, and has never been overruled by the Supreme Court of this state. We quote from the court's opinion in this case as follows:

"At the last term of this court opinion was rendered in this case, affirming the judgments of the lower courts. A motion for a rehearing has since been filed, in which it is pointed out that we overlooked the findings of fact as found by the trial court and. Court of Civil Appeals. The criticism of the opinion is correct. The trial court distinctly found that 'John J. Reasor never cultivated the 39 acres of land, or any part of it, by himself or through any one else, but rented the same from time of the purchase to the time of his death to yearly tenants, who paid for the use of the same the usual rental of one-third and one-fourth of the crop. John J. Reasor occasionally hauled his part of the crop to his residence on 90 acres, and he used the same for the support of his family. This use of the 39 acres by John J. Reasor, renting it and using the rents for the support of himself and family, made it a part of the homestead.' There was, however, evidence in the record that Reasor was seen cultivating the land, and following this, and not having in mind the finding of the trial judge, we so stated the facts in our opinion. *The evidence to which we refer, while undisputed in a certain sense, is of such a character that we do not feel that the trial judge was bound to give it credence. Therefore his finding upon the facts must be conclusive upon us, and the circumstances of cultivation by the defendant upon which the former opinion relied in part cannot be considered.* Under these circumstances we are of opinion that the facts established by the evidence are not sufficient to show that the 39 acres of land was a part of the homestead of the father of the defendants in error.

"In defining what shall constitute a homestead, section 51 of article 16 of the Constitution [Vernon's Ann.St.] expressly provides that the rural homestead may be one or more parcels, but at the same time provides 'that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family.' *It is clear, therefore, we think, before a homestead can be claimed upon land, it must be used for some one purpose of a home, either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like. The alleged fact that the father of the defendants in error*

*cultivated the tract in question, having been found against the defendants in error by the trial judge, we find no evidence that the land was used for the purpose of a home, other than that the proceeds were probably used in support of the family."* (Italics supplied.)

The case of Autry v. Reasor, supra, was distinguished in the case of Youngblood v. Youngblood, 124 Tex. 184, 76 S.W.2d 759, 760, where contiguous tracts (and not segregated tracts) were involved, wherein the court stated as follows:

*"The facts which have been set out make a different case from Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748. There the tract in controversy was detached from the tract upon which the home was situated. And there the decision finally made was distinctly placed upon the ground that there was 'no evidence that the land was used for the purpose of a home other than that the proceeds (the rents) were probably used for the support of the family.'*

*"Under the facts of this case the two tracts were practically and in effect contiguous.* The unfenced road between them afforded no substantial barrier to their use as one body of land. It may be assumed in the state of the record that the public had nothing more than a bare right to use the road, with the title in the owner of the adjoining lands. It seems to have been but a country road graded and kept in repair by the county and leading off from the main highway. *Since the two tracts are thus in effect at least contiguous, the rule in regard to segregated tracts is not appropriate, especially where, as here, the additional land subsequently acquired was used for the comfort and convenience of the family in like manner as that on which the home was situated.*

"As pointed out in the opinion in Ruhl v. Kauffman & Runge, 65 Tex. 723, 734, *contiguity of lots or parcels of land presents a 'situation * * * decidedly favorable for extending to the outside boundaries the homestead limits,' and, while the Constitution authorizes lots or parcels of land not contiguous to be united in one homestead, 'it would naturally require more distinct evidences of such destination in proportion to the inconvenience of using as parts of the same home lots remote from each other.'*

*"It is, as has been indicated, the actual use of the additional land that controls our conclusion. This is not the ordinary case of renting land and using the rents in money or in kind for the support of the family. The peculiar facts which have been detailed constitute in our opinion a using of the land 'for the purposes of a home.' Article 16, § 51, Constitution of Texas."* (Italics supplied.)

The only case that has ever criticized the Autry v. Reasor case, supra, is Woodward v. Sanger Brothers, 5 Cir., 246 F. 777, 779, which is heavily relied upon by appellant. However, the facts in the Federal Court case clearly reveal that the tract in question there had actually been impressed with homestead character *by actual cultivation of it by J. P. Woodward (the deceased husband) in 1887,* and later by his widow through the children and that it had not been abandoned thereafter. Although the Federal Court case criticises Autry v. Reasor, it does definitely cite it as authority to sustain its decision. We quote from Woodward v. Sanger Brothers as follows:

" 'That the 59¾-acre tract above mentioned was bought on October 1, 1883, and is about two miles from the 100-acre tract. *That during the year 1887 a part of same was cultivated by J. P. Woodward, * * *.* After his death * * * all or a part of it was rented out and a part worked by Mrs. Sarah C. Woodward through her children. * * *'

"The case of Autry v. Reasor may conflict with the conclusion hereinbe-

fore expressed, to the effect that a detached tract may be a part of the homestead, although never used in any way except by growing crops on shares; but it is distinct and direct authority to sustain the conclusion reached to the effect that the land here in controversy has had impressed upon it the homestead character. *By the agreed statement of facts, Woodward, the owner, had, since his ownership of the land, worked it with his own hands, and after his death it had been worked by Mrs. Woodward through her children. These acts of use are very much more definite and considerable than those held in the Autry-Reasor Case sufficient to impress the homestead character.*

"It is to be kept in mind always that, *whenever land shall have had impressed upon it the homestead character,* its abandonment as homestead must be beyond doubt before the homestead protection will be refused. There must be an unequivocal and absolute intention to abandon; and, in most cases, the inference of abandonment will not be indulged in the absence of the acquisition of a new homestead." (Italics supplied.)

■ The burden of proof upon the issue as to homestead vel non rests upon the claimant. Every fact that is essential to the existence of the asserted homestead right must be established by him by evidence which is not of doubtful nature. See the following authorities: 22 Tex.Jur., p. 35; Himes v. Himes, Tex.Civ.App., 55 S.W.2d 181; Sanders v. Crump, Tex.Civ.App., 23 S.W.2d 850; Taylor v. First Nat. Bank of Gilmer, Tex.Civ.App., 288 S.W. 235; Rockwell Brothers & Co. v. Hudgens, 57 Tex.Civ.App. 504, 123 S.W. 185; Mullins v. Looke, 8 Tex.Civ.App. 138, 27 S.W. 926; Roe v. Davis, Tex.Civ.App., 142 S.W. 950, affirmed 106 Tex. 537, 172 S.W. 708; Wade v. First Nat. Bank, Tex.Civ.App., 263 S.W. 654, error dism.; Murphy v. Lewis, Tex.Civ.App., 198 S.W. 1059; M. Kangerga & Bro. v. Willard, Tex.Civ.App., 191 S.W. 195; Gibson & Johnson v. Ward, Tex.

Civ.App., 35 S.W.2d 824; Balcomb v. Vasquez, Tex.Civ.App., 241 S.W.2d 650, wr. ref., n. r. e.

There is language in Woodward v. Sanger Bros., supra, to the effect "That the one attacking the homestead has the burden of proof," but no authorities are cited in support of it. Perhaps what the court had in mind was the line of authorities cited in 22 Tex.Jur., pp. 81 and 82, wherein it is stated: "The property *being conceded or shown to have been occupied at an earlier time in circumstances sustaining the claim of homestead,* the presumption arises that this situation continued to exist. * * * The party asserting abandonment of the homestead has the burden of proving same, etc." Woodward v. Sanger Bros., supra, specifically held that the land in question had once been impressed with a homestead use (cultivation) and that it had not been later abandoned. If Woodward v. Sanger Bros., supra, can be construed as holding that where a plaintiff pleads homestead (which is denied by the defendant) that the burden of disproving homestead is on the defendant denying it, then we are not willing to agree with it as such a holding would be contrary to the long list of Texas authorities cited above on burden of proof.

■ In the case at bar plaintiff pleaded homestead, defendant denied it generally and specially (except as to the 40-acre home). Defendant did not concede that the 48 acres was homestead. The issue was not abandonment but whether homestead had ever been impressed by use upon the 48 acres. If homestead had ever been impressed on the 48 acres, we agree that it would have continued until abandoned. But the issue was whether the 48 acres had ever been impressed by a homestead use and the burden of proof on this issue clearly devolved upon plaintiff who was alleging homestead.

■■ We do not believe that the mere collection and use of rents from the 48 acres (without showing prior impressment of a homestead use by some use recognized by the Supreme Court of Texas) would sustain

homestead for plaintiff in this case. Besides plaintiff is the only witness who testified that she and her husband used the rents and revenues from the property. She was an interested witness and it has been frequently held that the testimony of an interested witness even though uncontradicted only raises an issue of fact, which the court or jury trying the case has a right to disbelieve. In Himes v. Himes, 55 S.W.2d 186, it is stated:

> "*Moreover, the only testimony in the record offered in support of defendant's plea of homestead is that of defendant himself and wife, and both are evidently highly interested witnesses. It has been held frequently that the testimony of interested witnesses, even though uncontradicted, only raises an issue of fact for the jury.* See Stone v. City of Wylie, Tex.Com.App., 34 S.W.2d 842, 845; Krueger v. Bankers Lloyds, Tex. Civ.App., 45 S.W.2d 363; Wade v. First Nat. Bank, Tex.Civ.App., 263 S.W. 654, 656, writ dismissed." Also see Autry v. Reasor, supra; Funderburk v. Dofflemeyer, Tex.Civ.App., 234 S.W.2d 889, error ref.; Kamp v. Hargris Building Co., Tex.Civ.App., 238 S.W.2d 277, ref., n. r. e.; Ginsberg v. Selbest Dress, Inc., Tex.Civ.App., 238 S.W.2d 621, ref., n. r. e. (Italics supplied.)

The case of Johnson v. Russell, Tex.Civ. App., 220 S.W. 352, also holds that where a party states that a tract of land is his homestead it only amounts to a conclusion, and the burden is not met unless there is other evidence showing actual use for homestead purposes.

Also the will of A. L. Vaughn introduced in evidence by appellant was not helpful to her on the issue of homestead, as the testator clearly referred to the 40 acres as "the home" and "the homestead." Also the evidence with respect to the tax renditions was conflicting and appellant can not derive any help from the tax renditions in view of the trial court's finding against her on the homestead question on the 48 acres.

■ The burden of proof in this case was on appellant to prove that the 48-acre tract was homestead and she failed to prove it to the satisfaction of the trial judge who was the trier of the facts. We hold that the finding of the trial court that the 48 acres was *not homestead* is a finding that we are not authorized to disturb under this record. Appellant's points 1 and 2 are overruled.

■ By point 3 appellant contends alternatively that if the 48 acres is no part of the homestead, then that she is entitled to the 1953 rents on the basis that such crops were matured on the death of Mr. Vaughn. The record shows that the crops in question were not mature at the time of death in July, 1953, and that the crops were not severed and harvested until in the fall of 1953. The point is overruled. 13 Tex.Jur., pp. 5, 11; Schaefer v. First Nat. Bank, Tex.Civ. App., 189 S.W. 556.

We have carefully considered appellant's points 4 to 8 inclusive, deem them without merit, and same are overruled.

■ By point 9 appellant complains of the action of the trial court in taxing one-half of the court costs in the trial court against her. The trial court stated in the judgment: "It appearing to the court that all parties hereto were acting in good faith and each party having failed in part to sustain his respective claims and position, it is ordered, adjudged, and decreed that all costs herein be, and the same are hereby, taxed one-half against the plaintiff and one-half against the defendant, as such independent executor of the estate of A. L. Vaughn, deceased * * *"

In McCurdy v. Harry L. Edwards Drilling Co., Tex.Civ.App., 198 S.W.2d 609, 611, the trial court stated in his judgment: "That this is an accounting case in which both sides have failed in part to sustain their position, and half of the court costs are adjudged against each side." In overruling appellant's point with respect to this matter the appellate court stated:

> "Point VIII complains of the court's judgment dividing the costs. The

court gave upon the face of the record what he deemed good cause for adjudging half the costs against each party. Rule 141, Texas Rules of Civil Procedure, which is old Article 2066, Vernon's Anno.Tex.Stats., with minor textual changes, provides: 'The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules.' The rule vests in the court a sound judicial discretion to determine what is' good cause for dividing the costs between the parties. Pendery v. Panhandle Refining Co., Tex.Civ.App., 169 S.W.2d 766, writ refused. No abuse of the court's discretion in adjudging the costs is made to appear. Point VIII is overruled."

We hold that this record does not show an abuse of discretion on the part of the trial court in taxing the court costs equally against the parties. Appellant's point 9 is overruled.

The judgment of the trial court is affirmed.

Affirmed.

HALL, C. J., concurs.

DAVIS, J., dissents.

HALL, Justice (concurring).

I concur in the splendid opinion in this case by Associate Justice Fanning. It is exhaustive, and, in my opinion, thoroughly discusses the controlling questions raised by the parties on the appeal. In my opinion, the case of Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748, by Chief Justice Gaines undoubtedly is controlling here, to the effect that there must be some use for the family of the separated tracts of land to constitute them a homestead under the Constitution. Mrs. Vaughn having alleged that the several tracts of land constituted the homestead of her and her deceased husband, the burden rested with her,

under the numerous authorities cited in Justice Fanning's opinion, to prove by competent evidence that the use to which the property was put during the lifetime of her late husband, was such as would impress the 48-acre tract with homestead character. Appellant in this case made an attempt at proving a use that would impress the 48-acre segregated tract with homestead character. The trial of this case was before the court without a jury; therefore, he became the trier of the facts at issue between the parties and he also was a judge of the credibility of the witnesses and the weight to be given their testimony. The appellant was an interested witness and the trial court was not compelled to believe her testimony even if she had testified to the homestead uses of the property. At best, her testimony raised only an issue of fact to be decided by the trial judge. In this case, as pointed out by Justice Fanning, the trial court resolved all facts with respect to the homestead character of the 48-acre tract against appellant and in favor of appellee. This he had a right to do, and we would not be warranted in overturning his finding in this matter.

Therefore, it is my opinion that the opinion of Justice Fanning correctly determines the issues of this case, and I agree with him completely in the affirmance of the judgment of the trial court.

DAVIS, Justice (dissenting).

I find myself unable to agree with a part of the conclusions reached by a majority of the Court and hereby dissent.

In addition to the statement of the nature and result of the suit as stated in the majority opinion, I add the following:

Appellee filed the will of his father for probate on July 24, 1953 (just three days after his death). About a week after the death of A. L. Vaughn, Mrs. Stella Vaughn became ill and had to be carried to the home of her son near Vernon, Texas. She spent several days in a hospital; ran up a bill of $211 and her medicines since

then have cost her about $25 per month. And regardless of the amount of money she and her husband had on hand at the time of his death, it was frozen by the filing of the will for probate and she has been living off her children by her first marriage ever since the death of her husband.

Mrs. Stella Vaughn filed her notice of intention to take under the law instead of the will before the will was admitted to probate.

I am unable to locate the authority of the majority for the underscored part of their statement pertaining to the land owned by A. L. Vaughn and his first wife: "At the time of and prior to said marriage, A. L. Vaughn and his children of a prior marriage owned six tracts of land in Fannin County, Texas, aggregating 238 acres, *which they rented out and A. L. Vaughn did not have possession of any of it.*" There is evidence of the ownership and that the children by the first marriage had sued their father for a partition of same about the time he married appellant, but I am unable to find anything in the record that any of it was rented out or that A. L. Vaughn did not have possession of any of it.

The record is confusing as to the tracts of land involved. It is true that two tracts of 64 and 48 acres as described in the partition judgment, both in Fannin County, were awarded to A. L. Vaughn. The 64-acre tract is described as being part of Section No. 5, University League No. 1, and 40 acres out of 80 acres patented to J. B. Russell. The 48-acre tract is described as being in the E. W. Pittman Survey.

Appellant alleges three tracts of land in her petition as being the land described in the partition judgment, but says the 40 and 36 acres are in the James Hubbard Survey and the 48 acres in the E. W. Pittman Survey. There is evidence that four acres were sold off one 40-acre tract. Another 12-acre tract was bought by A. L. Vaughn on January 13, 1931, after his marriage to

appellant, but I cannot agree that the record shows it was bought by him out of his separate funds.

The trial court rendered judgment according to the following findings of fact and conclusions of law that were incorporated into the judgment:

"(a) That the forty acre tract of land and the thirty-six acre tract of land, contiguous and adjoining, both out of the James Hubbard Survey in Fannin County, Texas, as described in plaintiff's original petition, and containing approximately seventy-six acres in all, were, and constituted at the time of his death, the homestead of the plaintiff and the said A. L. Vaughn, deceased; and the same should be set apart and aside to plaintiff as her homestead, forming no part of the estate of the said A. L. Vaughn, deceased, subject to administration, unless and until the homestead rights of plaintiff therein shall hereinafter cease and terminate;

"(b) That, as shown by defendant's first amended original answer, the defendant, claiming as independent executor, has received, and holds in his possession, since the death of his testator, the sum of $366.07 as rents and revenues from the forty acre tract of land and the sum of $725.35 as rents and revenues from the thirty-six acre tract of land, described in subdivision (a) above, in all $1,091.42, to which plaintiff is entitled, the same forming no part of the estate of A. L. Vaughn, deceased, subject to administration;

"(c) That the forty-eight acre tract of land out of the E. W. Pittman Survey in Fannin County, Texas, described in plaintiff's original petition, was the separate property of A. L. Vaughn, deceased, *and at the date of his death* did not constitute any part of the homestead of plaintiff and the said A. L. Vaughn, deceased; and the rents and revenues therefrom collected after

the death of the said A. L. Vaughn were not the community property of plaintiff and the said A. L. Vaughn, deceased. (Italics mine.)

"(d) That the exempt personal property, consisting of household and kitchen furniture and one 1937 Chevrolet 4-door automobile, as shown by the inventory, appraisement and list of claims of such estate, exclusive of any separate personal property of either the plaintiff or the said A. L. Vaughn, deceased, should be set apart and aside to the plaintiff, forming no part of the estate of the defendant's testator subject to administration.

"(e) That an allowance in the sum of $750.00 should be made and set apart to plaintiff for her support for a period of one year, to be charged against the community property administered by the defendant as independent executor;

"(f) That an allowance in the sum of $100.00 should be made and set apart to plaintiff in lieu of exempt personal property not on hand at the time of the death of defendant's testator, the same to be charged against the community property administered by the defendant as such executor;

"(g) That the 1937 Chevrolet automobile, the Series E bonds, the corn and hay on hand, as shown by the inventory, appraisement and list of claims in such estate, are the community property of the plaintiff and A. L. Vaughn, deceased, and the plaintiff's community interest in the Series E bonds should be paid to her;

"(h) That the fractional share of the stock in The Continental National Bank of Fort Worth, as shown in the inventory, appraisement and list of claims of such estate, were and are the separate property of the said A. L. Vaughn, deceased;

"(i) That the defendant as independent executor is entitled to recover of the plaintiff the sum of $92.42 advanced by defendant's testator for payment on a Federal Land Bank note owed by plaintiff at the time of her marriage to decedent, the sum of $42.48 and $38.56, respectively, advanced by such decedent for the payment of taxes on her land, which were paid by decedent out of his separate funds for the use and benefit of plaintiff's separate estate;

"(j) That the advancements to Sam Vaughn, William Vaughn, Dessie Page and Robert B. Vaughn were made by the said A. L. Vaughn, deceased, prior to his marriage to plaintiff, and consequently no provision should be made for their collection in this judgment;

"(k) That a part of the advancements made to Archie Vaughn were made prior, and a part subsequent to the marriage of plaintiff and A. L. Vaughn, deceased, but the court is unable to determine what amount was advanced by such decedent after said marriage;

"(l) That the loan to Sudie Page in the sum of $600.00, as shown by the inventory, appraisements and list of claims of such estate, and the loan of $1,200.00 to Rosie Shockley, as shown by the will of the decedent, were made subsequent to the marriage of the plaintiff and such decedent, are not in fact advancement, but loans made by such decedent out of community funds, and that the judgment shall provide that the executor shall exert every effort to collect the same;

"(m) That a rental contract for the year 1954 upon the thirty-six acre tract and the tillable portion of the forty acre tract above mentioned, the same being the homestead tracts as heretofore found, has been made between defendant's testator and the said Zac Vaughn, prior to the death of the former;

"(n) That, after payment of the above allowances of $750.00 and $100.00, as set out in subdivision (e) and (f) above, the payment of the funeral bills of the said A. L. Vaughn, deceased, to J. R. Wilson & Company in the sum of $904.98; the medical bills of such decedent in the sum of $8.00 to Dr. Joe Stephens incurred during his last illness, the attorney's fee of the defendant as executor to Messrs. Cunningham, Cole and Southerland in the sum of $500.00, the defendant's commission as independent executor in the sum of $122.50, and the sum of $13.45 as probate court costs, one-half of all community funds on hand should be paid to the plaintiff; to which findings and conclusions, and each and every one of them, the plaintiff and defendant each then and there in open court duly excepted."

The challenges, or "counter-assignments" by appellee to all of appellant's points of error as set out in the majority opinion, in the opinion of this writer, are without merit. Under Rule 418(b), T.R.C.P., the appellant need only complain of the action of the trial court on specific matters in order to raise his point. It is not necessary to give any reason therefor. Wagley v. Fambrough, Tex.Civ.App., 163 S.W.2d 1072, no writ history; Insurance Inv. Corp. v. Hargrove, Tex.Civ.App., 179 S.W.2d 383; Vela v. Southland Life Ins. Co., Tex.Civ.App., 212 S.W.2d 210, reversed on other grounds, 147 Tex. 478, 217 S.W.2d 660; Foster v. Buchele, Tex.Civ.App., 213 S.W.2d 738, ref., n. r. e. And the majority, though critical of the points, were able to tell what errors the appellant was complaining about.

I disagree with the holding of the majority opinion for the errors complained of by appellant in her points one and two wherein she complains of the action of the trial court in finding and holding that the 48-acre tract of land involved in this suit was no part of their homestead at the time of the death of A. L. Vaughn, and denying to her the rents and revenues from the crops raised thereon in the year 1953 and so long thereafter as the same should remain her homestead.

The evidence shows that Mr. and Mrs. Vaughn moved upon the land in December, 1932, and resided there continuously until Mr. Vaughn's death. Mr. Vaughn did not farm any of the land after his marriage to Mrs. Vaughn, except for one year. His health did not permit him to farm the land after that, and all three of the tracts were rented out to his children, and occasionally to others, from about 1934 until his death. The evidence shows that Mr. and Mrs. Vaughn used the rents and revenues from all three tracts of land for their support and maintenance during all of that time. The evidence does not specifically show that any of the feed gathered from the 48-acre tract of land in controversy which was always rented on a rental basis of one-third of the feed and one-fourth of the cotton, was ever delivered into the barn of Mr. and Mrs. Vaughn, or that any of such feed crops were actually consumed by appellant and her husband or was actually fed to any of their stock. The evidence does show that there was corn and hay in the barn at the time of Mr. Vaughn's death. The use of such feed can most reasonably be implied in view of the evidence in the case without dispute, that the rents and revenues from the 48 acres was used for the support and maintenance of appellant and her deceased husband, in the same manner as that from the other two tracts that joined.

Appellee takes the position that in view of the fact that appellant failed to show any actual labor upon the land or actual consumption of any of the rents by her and her husband during his lifetime or to show that any of the feed was fed to any livestock, or that they did not cut any wood or posts off the land, is sufficient to defeat any claim of right of homestead in the 48 acres. Appellee further contends that A. L. Vaughn designated their homestead in his will as being the 40-acre tract of land

upon which they resided and that appellant cannot change that designation. The provision in the will pertaining to the 40 acres is as follows: "I also will and bequeath to my said wife, Stella Vaughn, for and during her natural life only, the *home place* consisting of about 40 acres, being the place where I now live, and the household and kitchen furniture located therein." (Underscoring mine). The word "homestead" was twice subsequently used in the will, but when one considers the will from its four corners, it seems that the other two tracts were included in the "homestead."

Appellant claims a life estate in and to the entire three tracts of land by virtue of our Revised Civil Statutes, and Section 51 of Article 16 of our Constitution which reads as follows:

"Sec. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same, shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

It is conceded by appellee that appellant is entitled to such life estate, but he contends that the "homestead" is limited to the 40 acres upon which the residence was situated in which Mr. and Mrs. Vaughn resided.

There has been much said by our courts about the showing of the "use" of rural property in order to be entitled to have a homestead character impressed upon it, especially where a part of the 200 acres

granted by the Constitution is separate and apart from a tract upon which the residence is situated. A careful study and reading of the Constitution does not justify such construction. By carefully analyzing the provisions of the Constitution, it will be noted that the two "provisos" contained therein pertain only to a homestead in a city, town or village. The writer is highly in accord with the holding of the U. S. Fifth Circuit Court of Appeals in the case of Woodward v. Sanger Bros., 246 F. 782–783, in which Mr. Justice Batts in speaking of a detached rural tract of land said:

"If a person should use his land in the way indicated, if he should thereby get his living, thereby provide himself in kind with corn and wheat needed for his own consumption, thereby provide the oats and fodder needed for the horse which he rides; by what provision of the law is he placed, with reference to the tract or tracts constituting the 200 acres which might have become his homestead, in any different position than he would be in if he had done a little work on each of the tracts with his own hand or by hired labor? The law could make such a difference, and, if made, whether reasonable or not, it would have to be observed. *But why should an absurdity be imputed to the law when there is nothing in its terms that would justify or excuse such imputation?*

"*The decision of the District Court in the present case is predicated upon an opinion of the Supreme Court of Texas in Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748. Both cases present, as strongly as may be, the absurd results of insisting upon a distinction which the lawmakers have not felt proper to make.* The homestead claimant in this case is 72 years of age. She is living on one tract, and she owns another tract so situate that it could be a part of her homestead. If she had, at any time while she was

the head of a family, labored with her own hands on this second tract in the making of a crop, it would admittedly have become a part of her homestead. Doubtless, the same consequences would have followed if she had worked it with hired hands, or if the labor had been done by any member of her family. But she did not work it with her own hands; she was doubtless entirely unable to so utilize the land. She did not work it with hired hands. There was probably an ample reason for this. The individual labors of the members of the family could be more efficaciously used in cultivating the tract upon which the residence was located. *She probably used the detached land in the only way in which she was in position to use it. From this use she got the support the law contemplated she should get.* In addition, she secured in kind what was needed to feed the one horse she used. She got what the Constitution intended she should have, without doing anything which the Constitution prohibited. She is under the terms of the law—under the reason of the law. Why should she not get the benefit of the law? If the rule insisted upon obtains, protection is withdrawn from a class for whose benefit it was peculiarly proper that the homestead law should have been framed. A robust man might work the land himself and extend to the detached tracts the homestead character. A woman with funds might, with hired labor, accomplish the same result; a woman with boys upon whom she could depend for support might utilize them in extending the homestead right for which she had only a limited need; but the infirm, penniless, childless old lady, who most needs, is denied.

"In the case of Autry v. Reasor, supra, Mr. Justice Williams, concurring in the original opinion which maintained the homestead right, said:

" 'I am not prepared, however, to agree that the single circumstance of the use of the rents, even in kind, for the support of the family, was sufficient to impress the rented land with the homestead character.'

"In the original opinion by Chief Justice Gaines were detailed the following facts: One Forner, a witness for defendants, testified with reference to the 39 acres in controversy:

" 'That the 29-acre tract was only partly in cultivation when it was originally purchased by Reasor, and that he or his employé prepared the whole of it for use; that he thought Reasor worked there. The ten acres adjoin the other. He did not know that he ever saw Reasor work on that tract, but that he, together with Reasor, gathered corn on the land.'

"Upon a rehearing the conclusion primarily reached was reversed, upon the ground that, notwithstanding the evidence which had been recited by the court, the trial court had found that:

" 'Reasor never cultivated the 39 acres of land, or any part of it, by himself or through any one else; he rented the same from the time of the purchase to the time of his death to yearly tenants, who paid for the use of the same.'

"The court held that this finding of the trial court was conclusive upon it, the appellate court, and concluded that the facts established (excluding the facts recited) were not sufficient to show the 39 acres to be a part of the homestead. *It will be noted that, while the court acquiesces in the proposition that the detached land must, to be homestead, be used for some of the purposes of a home 'either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like,' the distinct holding is that, if the trifling additional facts which have heretofore been detailed had existed, the homestead character would have been impressed upon the land.*"

The record in this case shows that Mr. and Mrs. Vaughn utilized this land in the only way possible in view of their physical conditions and declining years. They comingled the rents from all three tracts of land to such an extent that the proceeds from one tract could not possibly be distinguished from the proceeds of another. From these rents, they provided themselves with the sustenance of life and accumulated a little bank account which prevented them from becoming public charges of the state. Mrs. Vaughn, during those last 18 or 19 years of Mr. Vaughn's life, when he was unable to work, was a good and devoted wife and provided for him every comfort within her power. She nursed him almost continually from sometime in 1950 when he fell and broke his hip until his death. Surely, it was not the intention of the framers of our Constitution to penalize the aged and physically handicapped in such cases by placing an imaginary drawstring around the 200 acres of land set aside for a country homestead and provide that as people grow old and unable to labor that this drawstring would gradually creep to the little plot of land upon which the residence sits, remove the homestead character therefrom, and subject the excess of the 200 acres to forced sale, or exclude it from exemption as a homestead for tax purposes. Such construction is nothing less than inhuman. It places an impossible burden upon such people. What is the difference between taking a dollar from the sale of a little bag of rent corn or wheat to a mill (which mills no longer exist in rural communities), having the same ground into meal or flour and actually consuming the same? I am constrained to believe that *if* a "use" is mandatory for rural property, the time has come when the requirements of "use" must, of necessity, be construed differently. In our advanced age of modern conveniences, we no longer have a rural grist mill to which to carry corn, nor a flour mill for wheat. Machinery and trucks have taken the place of work stock and the wagon. The automobile has taken the place of the horse and buggy, and no posts are needed to fence in the machinery, trucks and automobiles while they are not in use. I doubt if there is one rural homeowner out of a hundred in Texas who uses wood to cook with and to warm by (butane gas and electricity have taken the place of this). Advanced science has convinced us that the use of homogenized and pasteurized milk is more sanitary and healthful than milk produced from an untested cow from an open corral or an unsanitary barn, and many rural people can purchase the more healthful product cheaper than they can actually produce their own milk and butter. Further, aged people, such as Mr. and Mrs. Vaughn in their last years could well afford the purchase of such items rather than drive themselves into all kinds of weather and try to live by the more ancient method.

The record further shows that Mr. Vaughn rendered all three tracts of land for taxes as his homestead from and including 1948, the year of his will, until his death, and claimed all the value of the 48-acre tract and claimed only part of the value of the two adjoining tracts under the statute that exempts homesteads from state ad valorem taxes up to $3,000, and appellee rendered them the same way for 1953. This may not be conclusive proof that the 48 acres is a part of the homestead, but it is awfully strong evidence of the intention of Mr. Vaughn during his lifetime, and ratified by appellee. And it is certainly contrary to the position appellee takes in this case. If the 48 acres was no part of the homestead at the time of the death of Mr. Vaughn, then it was never any part of the same, and the estate owes state ad valorem taxes, penalty and interest upon said 48 acres, if not all three tracts, at least from the date Mr. Vaughn became unable to work to date.

The record further shows that appellee farmed the 36- and 40-acre tracts of land in 1953 on a rental of 1/3 feed and 1/4 cotton. He made 30 bales of cotton and some feed, and paid $366.07 rent on the 40 acres supposedly going to Mrs. Vaughn under the will, and paid $725.35 on the 36 acres which he contends she is not entitled to because

of the will. The tenants on the 48-acre tract made only 23 bales of cotton and paid $923.-36 rent. The discrepancies do not favorably impress this writer.

For the reasons hereinabove stated, I do not believe the ancient rule of law stated in Autry v. Reasor, 113 S.W. 748 (dated December 2, 1908), and followed by the majority opinion here is applicable to this case. If it is the law, from the standpoint of justice it should be changed by our present Supreme Court. If such is the law, its ultimate effect will be to compel our aged, and other rural residents who are unable to perform manual labor, to become public charges, and finally create for them a Welfare State. The rule being so unjustly wrong, I feel that it is my duty not only to dissent, but also to criticise the same. I would sustain points 1 and 2 and would reverse and render that part of the judgment.

I am also unable to agree with the holding of the trial court and of the majority of this Court on the question of taxing one-half of the cost of the trial court against appellant. Not only was she deprived of her part of the community property by the action of the appellee, but also she has been denied any of the rights to which she was entitled as a matter of law. If she had not brought this suit, she would have been cut off with only $250 and a life estate in only 40 acres of land. Unquestionably, she has been compelled to endure untold embarrassment and suffering by being denied that to which she was rightfully entitled and should not be punished by adding any part of the court costs to her burden which appellee compelled her to incur. The reason stated by the trial court for taxing half the costs in the trial court against appellant is in direct conflict with his previous findings of fact, conclusions of law and judgment. I think the reasons given show a clear abuse of discretion and violates Rule 131, T.R.C.P. I would reverse and render that part of the judgment.

I concur with the other conclusions reached by the trial court and the majority here.