**NOVITA OIL CO. et al. v. SMITH et ux.**

No. 2916.

Court of Civil Appeals of Texas. Eastland.

Feb. 22, 1952.

Harry M. Rovenger, Dallas, Frank Bezoni, Midland, for appellants.

Herbert Marshall, Dallas, Hubert L. Watson, Stamford, for appellees.

GRISSOM, Chief Justice.

The Smiths sued Novita Oil Company, incorporated, and M. E. Hatcher for the purpose of establishing their ownership of a two-thirds interest in the Keen and Reed leases in Stonewall County, which were in the name of said oil company. Plaintiffs alleged that prior to May 18, 1950, they and M. E. Hatcher were engaged in the business of buying oil and gas leases and royalties in West Texas, particularly in Stonewall County, for their joint account, sharing the cost and expenses incurred in acquiring them; that Bonner Smith obtained the names of the owners of the Keen and Reed leases and, about May 18, 1950, called Keen at his residence in San Angelo and learned that a lease on his land in Stonewall County was for sale but the price would have to be "negotiated"; that Smith advised Keen he would go to San Angelo or send someone there to try to buy the lease; that

Smith sent his wife to Abilene to meet Mrs. Hatcher, before going to San Angelo to attempt to purchase the Keen lease; that Mrs. Smith met Mrs. Hatcher in Abilene and they prepared oil and gas leases on the Keen and Reed lands; that Mrs. Smith and Mrs. Hatcher went to San Angelo, met the Keens and obtained a lease on their land and then went to Clyde and obtained a lease from the Reeds; that Mrs. Smith paid part of the expenses incurred on said trip and those incident to acquiring the Keen and Reed leases; that Mrs. Hatcher, president of Novita Oil Company, incorporated, paid the lessees with checks on said company; that Mrs. Smith and Mrs. Hatcher then filed such leases for record in Stonewall County and Mrs. Smith paid for the revenue stamps and paid the recording fees.

The Smiths alleged that when said leases were so obtained it was agreed between the Smiths and Mrs. Hatcher and said oil company, acting through its president, Mrs. Hatcher, that the cost of the leases and the expenses incurred in buying them were to be paid for and owned two-thirds by the Smiths and one-third by Mrs. Hatcher and the oil company; that they asked Mrs. Hatcher to make a division of the interest so acquired and for a statement of the expenses so that they might pay their part; that defendants failed and refused to make a division of the leases or to render a statement of the expenses incurred; that plaintiffs were entitled to an undivided two-thirds interest in said leases; that the defendants are holding such interest as trustees for the Smiths; that plaintiffs agreed to pay their proportionate part of the cost and expenses of the leases, when requested to do so; that defendants have not informed the plaintiffs of such costs and expenses; that plaintiffs have offered to pay their share of the cost of said leases and the expenses incurred in obtaining them and have asked for a statement thereof; that defendants have failed to make an accounting or a division of interests; that plaintiffs, at the time the leases were acquired and ever since, have been able, ready and willing to pay their part of such costs and expenses.

There is evidence to the effect that the Smiths and Mrs. Hatcher were acquiring leases together through their joint efforts; that, before the Keen and Reed leases were purchased, they agreed that leases thereafter acquired would be jointly and equally owned by the three; that the Keen and Reed leases were acquired by the joint efforts and expense of all three; that there was no agreement that the leases should be taken other than in the name of said three; that the first time Mrs. Smith knew said leases would be placed in the name of the oil company was, when Mrs. Hatcher, at the very time the Keens agreed to lease them the land, said they would be made to Novita Oil Company and she, thereupon, without agreement or discussion, paid Keen with a check on said company; that, on the day the leases were acquired, Mrs. Smith offered to give a check for the Smiths' interest and asked for an assignment; that Mrs. Hatcher said then that, because there were other expenses incident to the purchase of other jointly owned leases not settled between them and the Smiths had a divorce suit pending, that Mrs. Hatcher would wait until the accounting was had and the suit was disposed of so that if Mrs. Smith obtained a divorce her one-third interest could be assigned directly to her, then she would assign the Smiths' interest to them.

The jury found that when said leases were executed the Smiths acquired an interest therein; that in all her dealings with said leases, Mrs. Hatcher was acting for Novita Oil Company; that defendants did not act in good faith in obtaining the signature of Bonner Smith to a release; that there was no consideration for its execution; that Bonner Smith, by executing said instrument, did not intend to release his ownership in the oil and gas leases in question.

Defendants did not except to the issues submitted and did not request the submission of any issue. The court rendered judgment awarding the Smiths a two-thirds interest in said leases and awarded the oil company two-thirds of the cost and expenses incurred in acquiring them, same having been paid into the registry of the

court by the Smiths. Defendants have appealed.

Appellants have not strictly complied with any of the rules relative to briefing. Most of their so-called points do not point out any particular ruling or action of the court. See Brown County Water Improvement Dist. No. 1 v. McIntosh, Tex.Civ.App., 164 S.W.2d 722(RWM); Kendall v. Johnson, Tex.Civ.App., 212 S.W.2d 232; Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331, 335(RNRE). Most of the "points" refer to several assignments of error, which, in effect, complain generally of the whole trial. Many of the assignments do not comply with the requirements of Texas Rules of Civil Procedure, rule 321. Most of the points and assignments are multifarious. See Cernes v. Kay, Tex.Civ.App., 210 S.W. 2d 882, 885.

■ The seventh point is, "The court erred in entering judgment for the plaintiff upon the verdict of the jury because the verdict of the jury (Tr. pages 34–37) was contrary to the law and the evidence in this case." This point is too general to call attention to any particular ruling or action of the trial court and does not present any question for our decision. Rule 322; Neinast v. Hill, Tex.Civ.App., 206 S.W.2d 625, 627; AAA Air Conditioning & Mfg. Corporation of Texas v. Barr, Tex.Civ.App., 186 S.W.2d 825, 826(WR); Rules 374, 321, 418(b) and 420.

■ The evidence is not set out in appellants' brief and there is no proper reference to the record where the matters complained of may be found. The burden is on appellants to show that the record supports their contention and to point out the place in the record where the matters complained of are shown. McDaniel v. Thompson, Tex.Civ.App., 195 S.W.2d 202, 204(WR); Sims v. Duncan, Tex.Civ.App., 195 S.W.2d 156, 161(RNRE). Rule 418(c) requires, where complaint is made of the admission of evidence, that the "full substance of such evidence so admitted" shall be set out with reference to the pages of the record where the same may be found. This rule was ignored. The argument and authorities are lumped together so that there is neither argument nor authority directed specifically towards any particular point.

■ In Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, it was held that if a point calls attention to the particular ruling or action complained of, it is sufficient and the court will look to such a point and the statement, argument and authorities thereunder to determine the question of reversible error. We have wasted much time in a serious endeavor to ascertain what questions we are called upon to decide. Without intending to set a precedent, we have concluded to pass upon the questions intended to be presented where such intent can be reasonably ascertained from the points and assignments considered in the light of the statement, argument and authorities.

■ Point 4 does complain of the action of the court in admitting the testimony of W. L. Pickens to the effect that appellants refused to go through with a deal made on the leases in question. It concludes that the admission of such testimony, over defendants' objection, was so prejudicial and inflammatory that it requires a reversal. Although not accurately pointed out, we have searched the statement of facts and found the objection made. We have not been able to find where the defendants ever objected to such testimony on the ground that it was "prejudicial and inflammatory," as stated in point 6, but, on page 323 of the statement of facts, it is shown that defendants objected because the testimony was immaterial and irrelevant. Such an objection has often been held too general. 3–A Tex.Jur., 211. Immediately preceding such objection the witness had been asked if he had the papers with him, had answered that he did, and the question was then asked, "May I see them?" Thereupon, said objection was made. The objection was not timely made. 3–A Tex. Jur., 213; Hix v. Wirt, Tex.Civ.App., 220 S.W.2d 530, 532(RNRE). Testimony had previously been admitted, without objection, to the effect that Mrs. Hatcher had sold the Keen and Reed leases to Pickens; that when Pickens was ready to close the deal, Mrs. Hatcher said she could not close the deal because one of the officers

154

who had to sign was out of town; that this was the last time the witness talked to Mrs. Hatcher. This was not objected to at the time. There was no motion to strike such testimony previously admitted without objection. See 3–A Tex.Jur., 213, 214. Furthermore, testimony of the same import was admitted, without objection, both before and after said objection was made. (Attention is respectfully directed to the statement of facts, pages 108, 109, 239, 241, 312, 314, 341 and 348.) Mrs. Hatcher testified in detail with reference to said matter and no objection was made. Admission of such testimony did not, therefore, constitute reversible error. Export Ins. Co. v. Axe, Tex.Civ.App., 36 S.W.2d 572, 575, affirmed Tex.Com.App., 58 S.W.2d 39. Said point is overruled.

■ Looking to the points, the assignments of error and the argument, it is evident that the only other complaint presented to any act or ruling of the court is to the effect that the fact that Bonner Smith executed a release and settlement agreement is conclusive of the proposition that the Smiths are not entitled to an interest in the Keen and Reed leases, because said instrument recited it was a release of all the interest he owned in leases recorded in Stonewall County in the name of either Novita Oil Company or Mrs. Hatcher. Smith testified to the effect that this instrument was executed for the sole purpose of complying with the requirements of the purchaser of the Wooldridge lease (unquestionably jointly owned by the Smiths and appellants) with reference to its title; that nothing was said with reference to the Keen and Reed leases when he executed such instrument and it was not intended to release his interest in the Keen and Reed leases; that he received no consideration for the execution of said instrument; that he only received his one-third of the price paid for the Wooldridge lease, to which he was entitled regardless of whether he owned an interest in the Keen and Reed leases. The jury's finding that there was no consideration for the execution of the release finds support in the evidence and is conclusive of the question.

The judgment is affirmed.