**WINN–LEE MASONRY COMPANY, Inc.,**
**Appellant,**

v.

**McCLENDON CONSTRUCTION COMPANY,**
**Appellee.**

**No. 6984.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 19, 1957.

Alison I. McLemore, Longview, David C. McCord, Dallas, for appellant.

Adams & Sheppard, Austin C. Hatchell, D. S. Meredith, Jr., Longview, for appellee.

FANNING, Justice.

Winn-Lee Masonry Company, Inc., a sub-contractor, filed suit against McClendon Construction Company, a partnership composed of C. C. McClendon and J. C. McClendon, Jr., as general contractor, for work, labor and material allegedly furnished and performed under a written sub-contract for masonry work upon three school buildings. Under the written sub-contract in question the contractor agreed to pay the sub-contractor for performance of said work and materials and related articles at the following rate, to-wit: Face brick furnished and laid $121 per thousand; common face brick furnished and laid $107 per thousand; common brick furnished and laid $102 per thousand; Haydite block 8 x 8 x 16 furnished and laid $569 per thousand; Haydite blocks 12 x 8 x 16 furnished and laid $982 per thousand; Haydite blocks 4 x 8 x 16 furnished and laid $446 per thousand; glazed tile furnished and laid, including shapes, $629 per thousand; fire bricks furnished and laid $242 per thousand; and all necessary wall ties and scaffolding $3,538 for all three buildings, total. Said contract further provided that the contractor pay sub-contractor every 30 days for work done and materials furnished; said contractor withholding 10% of such work done and material supplied to be paid 5% upon substantial completion, and the remaining such money retained until on or before 60 days after completion as certified to by the architect.

Plaintiff in its first amended original petition pleaded to the effect that under said contract it had furnished and laid certain enumerated numbers of face brick, common face brick, common brick, Haydite blocks 8 x 8 x 16, 12 x 8 x 16, 4 x 8 x 16, glazed tile including shapes, and fire brick, at the respective per thousand contract rates, amounting to $133,289.57. It further contended that it had furnished and laid other materials consisting of cast stone, Haydite lintels and Haydite Lite Crete brick at a price of $1,120.16, that it was entitled to the contract price of $3,538 for all necessary wall ties and scaffolding, and in the fifth paragraph of its above said pleading, sued for certain alleged "extras" which plaintiff pleaded were allegedly furnished at the request of the contractor, amounting to a total of $1,319.31, one of which items reads as follows: "Forty hours labor on C. C. McClendon's house, $175.00." The total of plaintiff's claim was $139,267.04. Plaintiff in its pleadings gave defendant credit for $129,790.51 cash paid as progress payments paid by the contractor to the sub-contractor and also allowed the contractor other credits, amounting to $558.35, with the total of

the credits allowed to the contractor being $130,348.86. After allowing the credits above stated, plaintiff sued for the alleged balance due, towit, the sum of $8,918.18, plus attorney fees, interest and costs.

Appellee denied liability and filed a cross-action contending that plaintiff had been overpaid by the amount of $5,728.62.

Trial was to the court without a jury. The trial court rendered judgment that plaintiff recover nothing and that defendant recover nothing on its cross-action and divided the costs between both parties. No findings of fact or conclusions of law were filed by the trial court. Plaintiff has appealed from the judgment rendered against it.

■ Appellant presents four points on appeal, which read as follows:

"1. The trial court erred in not rendering judgment for appellant in the amount sued for as the judgment so rendered by the court is contrary to the law and the undisputed evidence of this cause.

"2. The trial court erred in not rendering judgment for the extras sued on by appellant as the judgment so rendered by the court is contrary to the law and the undisputed evidence in this cause.

"3. The trial court erred in its interpretation of the written contract between appellant and appellee, as such contract is unambiguous and appellant is entitled to recover the amount sued upon as such judgment of the trial court is contrary to the law and the undisputed evidence.

"4. The trial court erred in the form and manner of judgment rendered, as such judgment so rendered by the trial court amounts to the trial court not having heard or considered the undisputed evidence and is tantamount to appellant not having received a fair trial, such undisputed evidence so

introduced before the trial court not being considered, adjudged or decided in whole or part by the trial court in favor or against either party."

We are inclined to the view that appellant's points are rather general and are not briefed in accordance with the briefing rules. See the following authorities: Rules 418 and 322, Texas Rules of Civil Procedure; Louisiana & Arkansas R. Co. v. Robinson, Tex.Civ.App., 302 S.W.2d 665, wr. ref., n. r. e.; Arana v. Gallegos, Tex.Civ.App., 284 S.W.2d 958; Smith v. Weindorff, Tex.Civ.App., 287 S.W.2d 740; Novita Oil Co. v. Smith, Tex.Civ.App., 247 S.W.2d 151; Carmichael v. Williams, Tex.Civ.App., 286 S.W.2d 456. However, we have carefully considered appellant's points and all the statements and the authorities in appellant's brief, and have carefully studied the record in this case, and have reached the conclusion that there is no reversible error in the record, and that the judgment of the trial court should be affirmed.

The sub-contract in question clearly provides payment at the respective rates per thousand for the masonry items in question that are *furnished and laid*. However, the contract is silent as to the method of ascertaining the number of the masonry items "furnished and laid". The sub-contract did not provide the means or method of counting the brick, nor did it provide for a count of brick satisfactory to both parties.

Appellant in its statement under its first point states:

"The contract provided that the Contractor Appellee agreed to pay the subcontractor for the *performance* of the work and *furnishing* of materials and related articles on the above-described rates per thousand brick laid. The paramount question being, 'How many bricks were laid?' Appellee wanted to measure the brick laid by taking sq. ft. and multiplying the same for a wall count. Appellant testified that the only accurate method of ascertaining the number of brick that went into the job

was on a delivery ticket invoice basis, and then at the completion of the job taking an inventory of the remaining brick and giving the contractor credit for the brick remaining on the job. Appellant testified that this was the only accurate method because there were many brick and fill-in brick on the inside of the wall which could not be accurately counted in a wall count.

"Appellant's theory on this accurate basis of counting was supported by Mr. Jack Rucker, Expert Estimator for Henry Beck, and Mr. Joe M. Carpenter as another expert contractor. Based upon this undisputed evidence, Appellant should have been awarded judgment in the court below."

Appellee in its statement under its first counter-point states:

"The President of Appellant testified he only wanted what was coming to it under the contract for the various masonry items 'furnished and laid' and as provided for by its terms, or sometimes referred to as 'furnished and put in the wall.' Obviously, Appellee admits he owed for that which was 'furnished and laid.' The paramount question, therefore, as Appellant states, is 'how many bricks were laid?' The contract is plain and unambiguous and the intention of the parties is clear. But the method of ascertaining that number 'furnished and laid' is uncertain. Appellant contends that the proper method is to take the invoices and deduct that which was left on the ground and that the remainder is the number which went into the building. This, obviously, does not take into consideration breakage, wastage, theft or errors in the amounts shown by the invoices and delivery tickets."

Appellant's witness Rucker testified that assuming everyone was honest, the "delivery ticket basis" was the only accurate

method in arriving at quantities of masonry, but that using the plans and specifications, he could figure within four or five per cent of masonry; and, that an expert, if he spent enough time could figure within one per cent; further, that if there was a difference in the brick count of 80,000 or 17 per cent (as evidenced in the case), "somebody goofed."

Appellant's witness Crawford also testified to the effect that the only way to compute the masonry was to "keep a check on every piece delivered and count the pieces left."

We quote further from appellee's brief as follows:

"Appellee resisted Appellant's method of computation because of wastage, etc., mentioned above and because if it were followed all such loss would be cast upon the contractor at 'laid in the wall prices,' which would be contrary to the provisions of the contract to the effect that he was only liable for that 'furnished *and* laid.' Perhaps the invoices and delivery tickets would show the material 'furnished' at the job site, but, we submit, there is not one scintilla of evidence furnished by the Appellant as to how much of it was 'laid.' Appellant alleged, as he had to do in view of the terms of the contract, that the masonry claimed was actually laid, but he wholly failed to discharge his burden of proving it. * * *

"Hence the trial court, on Appellant's testimony and the lack thereof, correctly held that it should take nothing.

"However, the case did not stop there, as well it might insofar as Appellant's cause of action was concerned. Appellee contended and proved, we submit, that the proper method of arriving at the amount of masonry was to compute it by and in accordance with the plans and specifications and that he

had overpaid $5,728.62, relying upon estimates and invoices submitted Appellee by Appellant.

"Mr. C. C. McClendon, one of the appellees, testified that the number of masonry units which went into the buildings was based upon a take-off of the plans and specifications; 'you measure the height of your wall by the length of your wall multiplied by the number of a particular size brick that goes into a square foot, would give you so many thousands; you take the square foot area and number of brick per square foot, and as a contractor he has always done so,' and that method is customary among all other contractors as far as he knew.

"Lawrence Birdsong, for 53–54 years a general contractor who has built a 'whole lot' of brick buildings, testified the number of bricks are figured from the plans and specifications; otherwise it would be a guess; and you can accurately figure the number from the plans and specifications; that after a building is completed, it is very simple to figure the number of brick in the wall. On cross-examination, he testified that it wouldn't take any time, not five minutes to figure how many bricks went into the boiler section; it was very easy, simple as counting dominoes, and made the count upon Appellant's request.

"J. Barnes, a graduate in Civil Engineering at University of Texas, now a partner in an architectural engineering firm in Austin, and formerly with the architect who designed the buildings in question, and who was responsible for the supervision of the construction of said buildings for the architect, testified at length. The pertinent testimony in answer to the question now being considered, i. e., how do you determine the masonry in a completed building, was substantially as follows: It is very easy to determine the mason-ry units in a completed building; it could be done in one of two ways; the easiest way is just to take it off the specifications, or you could count the brick.

"Raymond Cupp, with 23 years in the general contracting work, testified that he could take the plans and specifications and figure the number of masonry units which went into the buildings and could do it with reasonable accuracy—within 1 per cent.

"In view of the testimony of the last four witnesses above named, it is inconceivable to us why Appellant throughout its brief refers to 'undisputed evidence' in its behalf, which statements by Appellant are categorically denied.

"The contract did not provide that the contractor Appellee agreed to pay the subcontractor for the performance of the work and furnishing of materials, but the contract provided for payment for items 'furnished and *laid.*' There was no testimony that the bricks, etc., were laid, a burden resting on Appellant; hence judgment against it was proper. Certainly if Appellant contends the method of ascertaining how much was laid is undisputed, that simply isn't true in view of the above testimony of McClendon, Birdsong, Barnes and Cupp. There being conflicting evidence upon this issue, the trial court's necessary finding against Plaintiff by its take nothing judgment must stand and will not be disturbed by this Court by 'the substitution of its opinion for that of the trier of the facts."

The witnesses for appellee gave their estimates of the number of masonry items *laid* in the buildings and under their evidence and estimates it would appear that the contractor had overpaid appellant in varying amounts up to $5,728.62.

■ We have carefully reviewed the evidence and are of the opinion that appellant

failed to discharge the burden resting upon it to show the number of masonry items furnished and laid, and that appellant failed to show that the amount due it for the number of such masonry items furnished and laid, together with the other items claimed by it, exceeded the sums of money admittedly paid to it by appellee. Also in view of conflicting evidence upon these matters, the trial court's necessary finding against plaintiff by its take-nothing judgment must stand under this record.

■ We have this specific comment with respect to the "extras" sued upon, amounting to $1,319.31. As we construe appellant's pleadings, the partnership of McClendon Construction Company was sued for these extras on the theory that they were incurred in connection with the sub-contract in question and with reference to the building of the Gladewater schools and were allegedly authorized by the contractor. All of the "extras" in question were disputed except one item, "Forty hours labor on C. C. McClendon's house, $175.00," which apparently was a personal item of C. C. McClendon. With respect to this $175 item, Mr. McClendon testified as follows:

"Q. All right, sir. Now, Mr. McClendon, did Mr. Morris or the Winn-Lee Masonry Company at your request, send some brick layers to do some work at your house that you built at Greggton? A. That is correct.

"Q. And have you paid for that labor? A. No, I haven't.

"Q. All right, sir. Would that be forty hours labor on C. C. McClendon house, $175.00, does that sound about right to you? A. Yes."

Appellee in its brief with respect to the $175 item states:

"As to the extras in the Appellant's claim that which has been said above applied because they became a part of the contract sued upon except as to 'forty hours labor on C. C. McClendon's home—$175.00.' By no stretch of the imagination could this be a part of the contract to build two schools and a gymnasium for the Gladewater Independent School District. That was an entirely separate transaction and should be treated as such. * * * There is no alternation, change or addition to the contract herein sued upon and the work on McClendon's home had nothing to do with the Gladewater school contract."

Clearly the $175 item was a personal item of C. C. McClendon. As we construe plaintiff's pleadings it did not sue C. C. McClendon personally for this personal item but sought judgment against McClendon Construction Company therefor. The $175 personal item of C. C. McClendon was not a part of sub-contract sued on and the work done on McClendon's private home had nothing to do with the Gladewater school contract. (Even if it had been an item properly chargeable to McClendon Construction Company which we think it was not, same would have been offset by the cash payments made by McClendon Construction Company under this record.) The trial court correctly refused judgment against the partnership for this item under this record. Also since appellant has not sought judgment against C. C. McClendon for this clearly personal item we would not under this record be authorized to render a judgment against C. C. McClendon for the $175 item for which he was not sued. However, our affirmance of this case is without prejudice to any cause of action which appellant may have against C. C. McClendon personally for the $175 item in question.

Finding no reversible error in the record, each and all of appellant's points are overruled, and the judgment of the trial court is affirmed.

Affirmed.